# Huckenstine's Appeal.

1. Brick-making being a useful and necessary business, and necessarily exercised near towns, the *burning* of bricks, an essential part of the business, is not a nuisance *per se*.

2. Although an useful employment may produce discomfort or injury to those near to it, it does not follow that it should be restrained.

3. The aid of a court of equity is not of right but of grace; to be extended only where its exercise is certainly just, wise and proper.

4. In a question of restraining a lawful business, a court of equity will

[Huckenstine's Appeal.]

consider the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place.

5. In this case an injunction against a brick-kiln as injuring a vineyard and residence, was refused.

6. Rhodes v. Dunbar, 7 P. F. Smith 274; Richards's Appeal, Id. 105, adopted.

November 6th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Allegheny county*: In Equity: No. 14, to October and November Term 1871.

On the 15th of September 1866, a bill was filed by James Andrews against John Huckenstine: William Hamilton and James Wetherspoon having become interested after the filing of the bill, the court allowed the bill to be amended by adding their names as complainants.

The bill charged as follows:—

1 and 2. Andrews the plaintiff, about 1862, became owner of a piece of land in Reserve township, Allegheny county, and had since erected buildings and other improvements; planted a vineyard and orchards, which had begun to bear and become of great value, and he resided on the land.

3 and 4. The defendant in 1866 bought a piece of land adjoining, and made preparations for erecting brick-kilns and burning bricks; upon ascertaining which the plaintiff gave the defendant notice that by doing so he would injure and destroy the value of the plaintiff's property above mentioned.

5. The defendant since the notice had continued to manufacture brick, had erected a kiln within 15 feet of plaintiff's land, and commenced burning brick; had commenced erecting a winter-house on his land to manufacture brick through the winter, and intended to carry on the business throughout the year for an indefinite time.

6 and 7. The winds prevailing almost the whole time over the land were from the west, and blew the smoke, vapor and gases from the kiln and winter-house over the plaintiff's land, the smoke, &c., were injurious to vegetation, would destroy the plaintiff's vineyard and orchard, plants, trees and shrubbery; would render the land unhealthy and unfit for plaintiff's residence; would depreciate the value of his land; and he would thereby lose all the improvements he had made.

8. The defendant had been requested to desist, but he had refused, and declared that he would continue making and burning brick on his premises. The prayer was that the defendant might be restrained from burning brick on his land, and decreed to make compensation for the injury already done to the plaintiff, and for general relief.

The defendant's answer admitted the allegations of the 1st, 2d,

5th and 8th paragraphs of the bill, and denied the allegations of the 6th and 7th paragraphs.

As to the 3d, the defendant averred that he had leased the premises in 1862, and purchased the fee in 1865; he admitted the other allegations in this paragraph.

As to the 4th, he averred that " the plaintiff, instead of giving notice at once to defendant, at one time agreed with a full knowledge that respondent was going to erect a winter-house in which to make bricks, to furnish respondent with bricks to build the winter-house, and that afterwards, when respondent was ready to take the bricks, and his work had so far progressed that he needed them, then, and not till then, the plaintiff refused to give the bricks in accordance with his contract."

A replication was filed, and the case was referred to John Mc-Claren, Esq., as examiner and master.

A large amount of testimony was taken by each party.

The plaintiff's was that the winds usually prevailed from the west so as to carry the smoke, gas, &c., from the brick-works over the plaintiff's lands, and injure the foliage of the vines and their fruit, and would entirely destroy the young shoots in the spring of the year; all the vines, &c., would eventually be destroyed by its continuance; that the plaintiff's vines had been radically injured; that the land of the plaintiff was good, and very suitable for raising grapes and other fruit. There was evidence also that the smoke, &c., from the kilns rendered the plaintiff's land and the houses on it very inconvenient and uncomfortable as a residence.

The defendant's evidence was in conflict with the plaintiff's as to the injury to the plaintiff's vineyard, &c., by reason of the kilns. Many of the defendant's witnesses testified that the injury arose from the "wet, spouty and swampy" character of the plaintiff's land, and that the injury might be remedied by proper drainage.

The plaintiff in rebuttal gave evidence to show that his land was not damp and swampy. The master found that plaintiff gave the defendant notice as alleged in the bill; that the soil and exposure of the vineyard, &c., were good and well adapted to the culture of vines, fruit-trees, shrubbery, &c., and that the ground had been properly planted and cultivated; that winds during nearly the whole year carry the smoke, gas, &c., from defendant's kilns across plaintiff's land, and had injured his vineyard, orchard, &c., and if continued would destroy them and would injure and depreciate the premises of the plaintiff for a residence and a home.

The defendant excepted to the finding of the master.

The court (Sterrett, P.J.) overruled the exceptions, confirmed the report, and decreed that the defendant be enjoined from making bricks on his land mentioned in the bill, " in such manner as harm-

[Huckenstine's Appeal.]

fully or injuriously to affect the vineyard," &c., of the plaintiff, or render his premises unsuitable or unfit for a residence or home, and from allowing or permitting " the smoke, gas or vapor arising from the brick-kilns and winter-house on said lands of defendant to be blown over the lands of the plaintiff," so as to injure his vineyards, &c., or render his premises unsuitable for a home.

The defendant appealed to the Supreme Court, and assigned this decree for error.

*R. & S. Woods* and *John Miller*, for appellant.—Unless the plaintiff can establish by a verdict that the defendant's trade is a nuisance, equity will not restrain them: Fishmongers' Co. *v.* E. I. Co., 1 Dick 163; Squire *v.* Campbell, 1 M. & Cr. 459; Crowder *v.* Tinkler, 19 Vesey 617. The burning of brick near the habitation of men is not a nuisance: Duke of Grafton *v.* Hilliard, cit. in 18 Vesey 219; Richards's Appeal, 7 P. F. Smith 105; Rhodes *v.* Dunbar, Id. 274; Clark's Appeal, 12 Id. 447.

*W. W. Thomson* and *T. M. Marshall*, for appellees.—Whatever worketh hurt, inconvenience, or damage, is a nuisance: Lancaster Turnpike Company *v.* Rogers, 7 Barr 115; Bacon's Abridgment, title *Nuisance* A; 2 Stephens Nisi Prius 2361, 2362. Injury to shrubs and plants by noxious vapors from a smelting establishment a nuisance: St. Helen's Smelting Co. *v.* Tipping, 5 Am. Law Reg. 107; s. c. 116 E. C. L. Rep. 608. Carrying on a lawful business at unseasonable hours to the annoyance and discomfort of the neighbors, is a nuisance: Dennis *v.* Eckhart, 3 Grant C. 390; Barnes *v.* Hathorne, 7 Am. Law Reg. 81. Brick-burning is a nuisance: Notes to Barnes *v.* Hathorne, 7 Am. Law Reg. 87; Rhodes *v.* Dunbar, 7 P. F. Smith 274; Walter *v.* Selfe, 4 Eng. Law & Eq. R. 15. Carrying on works which fill the air with smoke and cinders, and render it offensive or injurious to health, and shake the buildings and render its occupation uncomfortable, is a nuisance: Wesson *v.* Washburne Iron Co., 7 Am. Law Reg. 125; Hayden *v.* Tucker, 6 Id. 72. Any trade or business, lawful in itself, which materially injures the property of others, or affects their health or renders the enjoyment of life uncomfortable, is a nuisance: Att'y Gen. *v.* Stewart, 9 Am. Law Reg. 387; Cleveland *v.* Gas Light Co., Id. 388; Ross et al. *v.* Butler, 8 Id. 252. Injury to property with reference to its reasonable and ordinary use, by continuous and hurtful acts, constitutes a nuisance: Sparhawk *v.* Passenger R. R. Co., 4 P. F. Smith 401; Whitney *v.* Bartholomew, 21 Conn. 213; Barclay *v.* Com'th, 1 Casey 503; Bridge Co. *v.* Bridge Co., 7 Pickering R. 344.

A failure to remonstrate against the erection of a nuisance will not amount to an equitable estoppel: Burt *v.* Smith, 3 Phila. 303. A court of equity will interfere, and by injunction protect

the clear rights of a suitor against a nuisance: Biddle *v.* Ash, 2 Ash 211.

Courts of equity may not only restrain the erection of a nuisance, but direct its abatement and give compensation for damages; Morris *v.* Remington, 1 Parsons 387; Smith *v.* Cummings, 2 Id. 92. Where the nuisance is of such a character as to occasion personal inconvenience or annoyance, equity will interfere by injunction to abate the nuisance: McCord *v.* Iker, 12 Ohio 387; Hilliard 269, 270; Story's Eq., §§ 925, 930; Ross *v.* Butler, 8 Am. Law Reg. 252; Att'y Gen. *v.* Steward, 9 Id. 387; Cleveland *v.* Gas Co., 9 Id. 388; Hayden *v.* Tucker, 6 Id. 62; Rhodes *v.* Dunbar, 7 P. F. Smith 274; Dennis *v.* Eckhart, 3 Grant 392; Scheetz's Appeal, 11 Casey 88; Vollmer's Appeal, 11 P. F. Smith 118.

The opinion of the court was delivered, January 9th 1872, by

AGNEW, J.—Brickmaking is a useful and necessary employment, and must be pursued near to towns and cities where bricks are chiefly used. Brickburning, an essential part of the business, is not a nuisance *per se:* Attorney-General *v.* Cleaver, 18 Vesey, Jr. 219, 220. It, as many other useful employments do, may produce some discomfort, and even some injury to those near by. But it does not follow that a chancellor would enjoin therefor. The heat, smoke and vapor of a brick-kiln cannot compare with those of many manufactories carried on in the very heart of such busy cities as Pittsburg and Allegheny. A court exercising the power of a chancellor, whose arm may fall with crushing force upon the every-day business of men, destroying lawful means of support, and diverting property from legitimate uses, cannot approach such cases as this with too much caution. Its aid is not of right but of grace, and it must be sure that the exercise of this kingly power is just, wise and proper, before it takes from a citizen his means of livelihood, and destroys the value of his property for legitimate uses. And more than this, it must look at the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place wherein it is called upon to exercise the power. In no other way can its justice, wisdom and propriety be exhibited in adjudicating upon the rights, interests and employment of the people subjected to its power. It requires no great or extraordinary skill to inform us of the nature and effect of a brick-kiln, within whose walls dried clay is baked into bricks by means of wood and coal combined together as a fuel. It is a subject of common observation, and its effects are not so mysterious as to require the skill of the chemist to unfold their occult properties. In the present case the kiln of the defendant is situated on an outskirt of the city of Allegheny. The properties of the plaintiff and defendant lie adjoining each other, on the hillside overlooking the city, whose

[Huckenstine's Appeal.]

every-day cloud of smoke from thousands of chimneys and stacks hangs like a pall over it, obscuring it from sight. This single word describes the characteristics of this city, its kind of fuel, its business, the habits of its people and the industries which give it prosperity and wealth. The people who live in such a city or within its sphere of influence do so of choice, and they voluntarily subject themselves to its peculiarities and its discomforts, for the greater benefit they think they derive from their residence or their business there. A chancellor cannot disregard all this. "You must look at it," said Lord Cranworth, "not with a view to the question whether abstractly that quantity of smoke was a nuisance, but whether it was a nuisance to the persons living in the town." And, as remarked by Lord Chancellor Westbury in the same case: "If a man lives in town of necessity he must submit himself to the consequences of the obligations of trades which may be carried on in his immediate neighborhood, which are actually necessary for trade and commerce, also for the enjoyment of property, and for the benefit of the inhabitants of the town. If a man live in a street where there are numerous shops, and a shop is opened next door to him, which is carried on in a fair and reasonable way, he has no ground for complaint, because to himself individually there may arise much discomfort from the trade carried on in that shop." Cited from Tipping v. St. Helena Smelting Co., 116 E. C. L. R. 608, by Thompson, C. J., in Rhodes v. Dunbar, 7 P. F. Smith 287–8. With these views in mind, an examination of the evidence in this case discloses no ground to move a chancellor to enjoin against the use of the defendant's kiln, and thus to destroy his business and divert his property from a legitimate use. The *gravamen* of the plaintiff's bill is that the smoke and gases from the defendant's kiln injured and partially destroyed his grape-vines and fruit-trees, and make his dwelling uncomfortable. In regard to the injury to the vines and trees which is the chief ground of complaint, the plaintiff's case is doubtful on two grounds. In the first place, his testimony as to the injury from the causes stated is counterpoised if not outweighed by the testimony of the defendant both in the number and skilfulness of the witnesses. And in the second place it is rendered more than doubtful by the testimony of the defence that the true cause of the blight in the vines is the nature, and cold and wet condition of the soil. The force of the rebutting evidence that the hillside is dry, and for the reason that water will not lie on a slope; is broken by the consideration known to every common observer that water following the lines of stratification will exude from hillsides, oftentimes in large quantities and the whole year round. To entitle a plaintiff to an injunction he must make out a plain case of injury and damage. "If the injury be doubtful, eventual or contingent, equity will not interfere by injunction:"

[Huckenstine's Appeal.]

Rhodes *v.* Dunbar, 7 P. F. Smith 287; and a "chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing, and leaving the party to his redress at the hands of a court and jury:" Richard's Appeal, 7 P. F. Smith 113, 114. In regard to the alleged annoyance to the dwelling-house by the smoke from the kiln, nothing needs to be said except that this case is clearly within the principles ruled in Richard's Appeal, *supra.*

After a full and careful consideration of the case, we are compelled to reverse the decree of the Court of Common Pleas and dismiss the bill of the plaintiffs at their costs and without prejudice to any right they may have to recover in an action at law.

Decree accordingly.