#### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

#### EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1904.

---

W. M. MADISON *et al. v.* DUCKTOWN SULPHUR, COPPER
& IRON COMPANY, LIMITED.

and

AVERY MCGHEE *et al. v.* TENNESSEE COPPER COMPANY
AND DUCKTOWN SULPHUR, COPPER & IRON COM-
PANY, LIMITED.

and

ISAAC FARNER *v.* TENNESSEE COPPER COMPANY.

(*Knoxville.* September Term, 1904.)

1. **INJUNCTION AGAINST NUISANCE. Injunction bill by
several persons whose separate lands are affected by the same
nuisance.**

Two or more persons may unite in a bill to enjoin a nuisance,
although their lands are separate and distinct from each other,
where it appears that the lands of all are affected in substanti-
ally the same way by the nuisance complained of. (*Post, pp.
347, 348.*)

Madison v. Copper Co.

Cases cited and approved:  Rowbotham v. Jones, 47 Ñ. J. Eq., 337; Jung v. Neraz, 71 Tex., 396; Palmer v. Waddell, 22 Kan., 352.

**2.  SAME.  Injunction bill against several defendants whose independent acts combine to produce a nuisance.**

And so, where several persons, acting independently, combine to produce a nuisance, such persons may be joined as defendants in a suit for injunctive relief.  (*Post, p.* 348.)

Cases cited and approved:  Thorpe v. Brumfitt, L. R., 8 Chy., 650; Woodyear v. Schaefer, 57 Md., 1; People v. Ditch Co., 66 Cal., 138; Kingsbury v. Flowers, 65 Ala., 479.

**· 3.  SAME.  No joinder of complainants nor of defendants to recover damages for nuisance, when.**

There can be joinder neither of complainants nor of defendants for the purpose of recovering damages for the injuries caused by such nuisance.  (*Post, p.* 348.)

Cases cited and approved on the first point:  Demarest v. Hardham, 34 N. J. Eq., 469; Railroad v. Prudden, 20 N. J. Eq., 530; Rowbotham v. Jones, 47 N. J. Eq., 337; Fogg v. Railroad, 20 Nev., 429.

Cases cited and approved on the second point: Swain v. Copper Co., 3 Cates, 430; Sadler v. Railroad, 2 Q. B., 688.

**4.  SAME.  Same.  Bill against several defendants to enjoin nuisance, and to recover damages therefor, is demurrable as to damages, but demurrer must be confinded to this defect.**

An injunction bill against several defendants to enjoin a nuisance created by their independent and separate acts; and to recover the damages resulting therefrom, is demurrable as to the claim for damages; but the demurrer must be so framed as to raise objection to that defect alone, and a demurrer not so framed, but directed against the whole bill, is not good, and must be overruled.  (*Post, pp.* 348, 349.)

Madison v. Copper Co.

5. **PLEA OF FORMER SUIT PENDING.** Should not be sustained where former suit contains less matter of litigation, when.

A plea of former suit pending, filed by one defendant to a bill against two defendants to restrain a nuisance and to recover the damages resulting therefrom, should not be sustained, where the former suit was by only part of the complainants, and without any claim for damages. (*Post, pp.* 349, 350.)

Cases cited and approved: Moore v. Holt, 3 Tenn. Chy., 141; Parmelee v. Railroad, 13 Lea, 600, 602; Croft v. Worthley, 1 Chy. Cas., 241; Rigby v. Stringways, 2 Phill., 175; Schuehle v. Reiman, 86 N. Y., 273.

6. **CHANCERY PLEADING AND PRACTICE.** One complainant dismissing bill as to himself against one of two defendants may proceed against the other.

Where one of several complainants causes a bill to be dismissed as to himself, on his own motion, as against one of two defendants, who were sued jointly, to restrain a nuisance and recover damages therefor, may thereafter proceed against the other defendant, and it is error to dismiss the bill as to him on the ground that he cannot thereafter proceed against the other defendant, and on appeal the cause will be remanded as to him for the purpose of separating his cause of action from that of the other proceeding against the two defendants. (*Post, pp.* 347, 350.)

7. **INJUNCTION AGAINST NUISANCE.** Proper case, clear right and injury, no adequate remedy at law, and no laches must be shown.

The injunctive remedy in equity is not a matter of course; a proper case must be stated, and the right must be clear; the injury must be clearly established; if the injury can be adequately compensated at law by a judgment for damages, equity will not interfere by injunction; and the equitable remedy by injunction must be applied for with reasonable promptness, for there must be no laches. (*Post, pp.* 350-355.)

Madison v. Copper Co.

Cases cited and approved:  Caldwell v. Knott, 10 Yer., 210, 212; Clack v. White, 2 Swan, 540; Brew v. VanDeman, 6 Heis., 433, 440; Weakley v. Page, 102 Tenn., 178; W. J. Stamps et al. v. W. H. Hartford et al., MS., Nashville, December term, 1898; and many cases in other States and countries cited in the opinion on pages 350-355.

**8. SAME. Same. No injunction after delay of ten years, when; case in judgment.**

An injunction will not be issued against the operation of a copper plant for the purpose of restraining or abating a nuisance caused by the pollution of the air with poisonous smoke and gas emitted from the roast piles and furnaces of such plant, where the complainants had been suffering the injuries complained of for ten years when the bill was filed, without making any complaint of them in any forum, and where in the meantime several hundred thousand dollars had been expended in making improvements on such plant, and the nature and source of the injury were such that the complainants could not have been mistaken as to the cause or extent of it. (*Post*, *pp*. 355, 356.)

**9. SAME. Injunction against a lawful business in a convenient place, where there is another nuisance at same place, when.**

Equitable relief by injunction will not be denied because the persons proceeded against are engaged in a lawful business; nor because the works complained of are located in a convenient place, if that place be one wherein an actionable injury is done to another; nor will the existence of another nuisance of a similar character at the same place furnish a ground for denying relief, if it appears that the defendant has sensibly contributed to the injury complained of; nor is it a question of care and skill, but purely one of results. (*Post*, *pp*. 357, 358.)

Numerous cases in other States and countries cited in the opinion on pages 357, 358.

Madison v. Copper Co.

**10. SAME. Same. Injunction must be determined upon a consideration of all the special circumstances of each case.**

The foregoing principle must be weighed and applied in the light of the controlling influence of the principle that the granting of an injunction against a nuisance is not a matter of absolute right, but rests in the sound discretion of the court, to be determined on a consideration of all of the special circumstances of each case, and the situation and surroundings of the parties, with a view to effect the ends of justice. (*Post, pp.* 358-363.)

Cases cited and approved: Clack v. White, 2 Swan, 545; and many cases in other States and countries cited in the opinion on pages 358-363.

**11. SAME. Same. Injunction destroying property worth two million dollars will not be issued to protect property worth less than one thousand dollars, when.**

Where a bill is filed to restrain or abate a nuisance caused by the pollution of the air with poisonous smoke and gas emitted from the roast piles and furnaces of a copper reduction plant; and to recover the damages resulting therefrom, the injunctive relief will be withheld, where the injunction against the operation of the plant would injuriously affect a great number of persons, and practically wreck two great mining and manufacturing enterprises, and destroy property worth two million dollars, in order to protect several small tracts of land aggregating in value less than one thousand dollars, but will compensate complainants by awarding damages for the injury to their property. (*Post, pp.* 333, 338, 358-367 and especially 366 and 367.)

Cases cited and approved: Richi v. Brewing Co., 105 Tenn., 651, 653; and many cases in other States and countries cited in the opinion on pages 359-365.

**12. SAME. Same. Statutory discretion in circuit court as to abatement of nuisances applies to chancery court.**

The statute giving the circuit court, in actions for damages for nuisances, a sound discretion as to whether injunctive relief

Madison v. Copper Co.

shall be given for the abatement of the nuisance, expresses the
legislative policy and will in respect to the use of the injunctive
power in nuisance cases, and applies to the chancery court as
well as to the circuit court. (*Post, pp.* 363-366.)

Code cited and construed: Sec. 5158 (S.); sec. 4139 (M. & V.);
sec. 3403 (T. & S. and 1858).

Acts cited and construed: 1901, ch. 139.

13. **Same. Refused on condition of payment of damages and bond to secure same, when.**

In the exercise of its discretion to refuse an injunction against
a nuisance, the chancery court has power to impose upon the
defendants, as a condition annexed to such refusal that they
shall pay the accrued damages, and may be required to execute
a bond to secure the same, in default of which an injunction
will be issued to continue during such default. (*Post, p.* 368.)

14. **SAME. Damages upon refusal of; claim of each complainant made a distinct case against each defendant complained of; reference for damages.**

In a suit by several complainants against two distinct defendants
to enjoin and abate a nuisance to their respective property
caused by defendants and to recover damages therefor, upon
the court's refusal to allow the injunction, damages may be
awarded, and for this purpose an order may be entered separat-
ing the demand of each complainant, and making it a distinct
case against each defendant complained of in the bill, to the
end that the damages may be assessed against the two defend-
ants separately. (*Post, pp.* 368, 369.)

Case cited and approved: Swain v. Copper Co., 3 Cates, 430.

## FROM POLK.

Appeal from the Chancery Court of Polk County.—
T. M. McCONNELL, Chancellor.

Madison v. Copper Co.

H. H. INGERSOLL, W. A. GUINN, and B. B. C. WITT, for Madison.

BROWN & SPURLOCK and JAMES G. PARKS, for Ducktown Sulphur, Copper & Iron Co. in first case.

J. E. MAYFIELD and B. B. C. WITT, for McGhee.

CORNICK, WRIGHT & FRANTZ, for Tennessee Copper Co.

JAMES G. PARKS and G. G. HYATT, for Ducktown Sulphur, Copper & Iron Co. in the second case.

H. H. INGERSOLL and W. A. GUINN, for Farmer.

CORNICK, WRIGHT & FRANTZ, and R. MEIGS COPELAND, for Tennessee Copper Co. in third case.

———

MR. JUSTICE NEIL delivered the opinion of the Court.

These three suits were instituted separately in the court below, but tried together here. They embrace, in the main, the same facts and the same questions of law, and will be disposed of in a single opinion.

The bills are all based on the ground of nuisance, in that the two companies, in the operation of their plants at and near Ducktown, in Polk county, in the course of reducing copper ore, cause large volumes of smoke to issue from their roast piles, which smoke descends upon the surrounding lands, and injures trees and crops, and

113 Tenn—22

renders the homes of complainants less comfortable and their lands less profitable than before. The purpose of all the bills is to enjoin the further operation of these plants; the first bill having been filed against the first-named company, the last bill against the second company, and the intermediate bill against both companies.

The following general facts are applicable to all of the cases:

Prior to 1870 one Rhat began the operation of a copper mine at Ducktown, and worked it for several years. Subsequently it was owned by the Union Consolidated Mining Company, Mr. Rhat's successor. These operations were continued until the year 1879, and were then suspended until 1891. During the latter year the Ducktown Sulphur, Copper & Iron Company commenced operating the properties formerly owned and operated by the Union Consolidated Mining Company, and has continued to operate them ever since. The Pittsburg. & Tennessee Copper Company began operations at Ducktown about the year 1881, and continued until about 1899, when it sold out to the defendant Tennessee Copper Company. The latter began its operations in 1900, and commenced roasting ores in May, 1901. It has continued its works ever since.

Ducktown is in a basin of the mountains of Polk county, in this State, not far from the State line of the States of Georgia and North Carolina. This basin is six or eight miles wide. The complainants are the own-

ers of small farms situated in the mountains around Ducktown.

The method used by the defendants in reducing their copper ores is to place the green ore, broken up, on layers of wood, making large open-air piles, called "roast piles," and these roast piles are ignited for the purpose of expelling from the ore certain foreign matters called "sulphurets." In burning, these roast piles emit large volumes of smoke. This smoke, rising in the air, is carried off by air currents around and over adjoining land.

The lands of the complainants in the first bill, Carter, W. M. Madison and Margaret A. Madison, Verner, and Ballew, lie from two to four miles from the works. The land of Farner, complainant in the last bill, lies six or eight miles away. The distance of McGhee's land is not shown. The complainants in the first and second bills are the same, with the exception that McGhee does not appear in the first bill, and Verner and Ballew do not appear in the second bill.

These lands are all thin mountain lands, of little agricultural value. Carter's land consists of eighty acres, assessed at $80; Verner's, eighty-nine acres, at $110; Ballew's, forty acres, at $66; Madison and wife, forty-three acres, at $83; W. M. Madison, about one hundred acres, at $180; Isaac Farner, one hundred acres, at $180. Avery McGhee has seventy-five acres. W. M. Madison has a tract across the Georgia line, and Mrs. Madison also one of one hundred acres there. The assessed value

of these last three tracts does not appear. All of these lands, however, lie in the same general section of country, and we assume their value to average about the same, in proportion to acreage.

All of the complainants have owned their several tracts since a time anterior to the resumption of the copper industry at Ducktown in 1891, and have resided on them during this period, with the exception of Avery McGhee, who worked for one of the defendant companies a considerable time, and Margaret Madison, who removed to Snoddy, in Rhea county, two or three years ago.

The general effect produced by the smoke upon the possessions and families of the complainants is as follows, viz.:

Their timber and crop interests have been badly injured, and they have been annoyed and discommoded by the smoke so that the complainants are prevented from using and enjoying their farms and homes as they did prior to the inauguration of these enterprises. The smoke makes it impossible for the owners of farms within the area of the smoke zone to subsist their families thereon with the degree of comfort they enjoyed before. They cannot raise and harvest their customary crops, and their timber is largely destroyed.

In the first case it is shown that the complainants sold their timber to the first-named defendant, but they were under the necessity of either selling it, or permitting it to go to waste upon the ground; it having been

either injured or killed by the smoke.   Some of these complainants, however, obtained as much by the sale of their timber to the first-named company as their land cost them.

The facts found in the third case show the following in respect of the situation and injuries of complainant Farner, viz.:   "He has lived on his farm since its purchase by him, some twenty or more years ago, and has supported his family, in connection with such other work as men similarly situated do in the support of their families.   He has his garden and orchard, and does, or did, raise corn, hay, and such other crops, and also vegetables, as are usually raised in that mountain section of our country.   .   .   .

"The proof in the record shows that the smoke not only causes the wife of complainant to cough, but makes her head ache.   It also shows that it has injured and destroyed the timber, or a portion of it, of complainant, and that it injures his crops.   The extent to which it has destroyed his timber is a matter of dispute, and it is also a matter of dispute as to the amount of injury it inflicts upon his crops.   Some of the defendants' witnesses say that it has destroyed from eight to ten per cent. of the timber on the place.   Other witnesses say— and especially the witnesses of the complainant—that it has destroyed from thirty to fifty per cent. of the timber on the place.   .   .   .

"This complainant testifies, in effect, that if this smoke continues from time to time, and from year to

year, to envelop his farm, he will have to leave it, because it is injurious to the health of his wife, and that, on account of its injurious effect to his crops, he will be unable to support his family on it.

"There is no material evidence in the record to dispute the effect of this testimony of complainant."

In the second case the finding of facts shows that the injuries to timber and crops and to the comfort of the complainants are much the same as these already stated. But, notwithstanding these facts, it is also found that the lands of at least two of these complainants, Carter and W. M. Madison, have continuously increased in assessed value from 1895 to 1903, inclusive.

There is no finding in either of the cases that the output of smoke by the Ducktown Sulphur, Copper & Iron Company has increased to any extent since 1891, when the business of mining and reducing copper ore was resumed at Ducktown. There is likewise no finding as to this matter in respect of the Tennessee Copper Company since it began roasting ores in May, 1901.

There is a finding that the Ducktown Sulphur, Copper & Iron Company acquired its plant in 1891, and that it has spent several hundred thousand dollars since that time in improving and enlarging the plant.

The court of chancery appeals finds that the defendants are conducting and have been conducting their business in a lawful way, without any purpose or desire to injure any of the complainants; that they have been and are pursuing the only known method by which these

Madison v. Copper Co.

plants can be operated and their business successfully carried on; that the open-air roast heap is the only method known to the business or to science by means of which copper ore of the character mined by the defendants can be reduced; that the defendants have made every effort to get rid of the smoke and noxious vapors, one of the defendants having spent $200,000 in experiments to this end, but without result.

It is to be inferred from the description of the locality that there is no place more remote to which the operations referred to could be transferred.

It is found, in substance, that, if the injunctive relief sought be granted, the defendants will be compelled to stop operations and their property will become practically worthless, the immense business conducted by them will cease, and they will be compelled to withdraw from the State. It is a necessary deduction from the foregoing that a great and increasing industry in the State will be destroyed, and all of the valuable copper properties of the State become worthless.

The following facts were also found, viz.:

That the total tax aggregate of Polk county for the year 1903 was $2,585,931.43, of which total the assessments of the defendants amounted to $1,279,533. It is also found that prior to the operations of these companies there lived in the district where these works are located only two hundred people, whereas there are now living in this district, almost wholly dependent upon these copper industries, about 12,000 people.

It is also found that one of the defendants, the Tennessee Copper Company, employs upon its pay roll 1,300 men, and that the average pay roll is about $40,000 per month, nearly all of which employees have been drawn from the population of Polk and neighboring counties.

It is further found that one of the defendants, the Tennessee Copper Company, consumes approximately 3,000 tons of coke, 2,800 tons of coal, and 1,000 cords of wood per month, and that it purchases and uses 2,110 carloads of coal, coke, wood, etc., per annum. In the year 1901 it purchased and used approximately 1,100 car loads of cord wood, cross-ties, lumber, and quartz. It was also found that eighty per cent. of these supplies were purchased from, and delivered by, the citizens of Polk county. The aggregate paid out for supplies is not stated in the findings of the court of chancery appeals, and cannot be here stated accurately, but certainly the amount is very large; and it seems from the figures stated that one of the defendants alone, the Tennessee Copper Company, pays out annually in wages in Polk county nearly a half million of dollars. The court of chancery appeals finds that the other company employs between 1,100 and 1,200 people, and from this it may be inferred that the company pays out in wages and for supplies annually nearly as much as the Tennessee Copper Company.

It is quite apparent that the two companies pay out annually vast sums of money, which are necessarily of great benefit to the people of the county, and that they

are conducting and maintaining an industry upon which a laboring population of from ten to twelve thousand people are practically dependent; and it is found, in substance, by the court of chancery appeals, that, if these industries be suppressed, these thousands of people will have to wander forth to other localities to find shelter and work.

The first bill was filed July 1, 1901. Its purpose was to enjoin the further operation of the works of the defendant Ducktown Sulphur, Copper & Iron Company. This bill was put at issue, and upon the hearing was dismissed by the chancellor. On appeal the decree of the chancellor was reversed by the court of chancery appeals, and a perpetual injunction awarded.

The bill in the second-named case was filed on the 14th of July, 1903. Its purpose was to obtain an injunction to perpetually enjoin the operation of both of the defendant corporations, and to obtain a recovery against them for the injuries which the complainants had suffered by the smoke.

There were several demurrers filed to this bill by the two defendants, but we need mention only two of the grounds assigned. One of these grounds was that the bill was multifarious, in that it presented two distinct causes of action against the defendants; that is, a separate cause of action for each of the complainants. The other ground of demurrer was that the defendants were improperly joined in the bill, there being no joint liability shown by the allegations of the bill.

The demurrers were overruled in the chancery court, and thereupon the defendants answered separately.

The answers need not be referred to specially, further than to say that they made proper issues upon which proof was taken. The defendants admitted that they were liable in actions at law in damages for whatever injuries had been inflicted, but denied the right of the complainants to an injunction.

There was an allegation in the bill to the effect that both of the defendants had mortgages upon their properties to the full amount of the taxable value thereof. It was admitted in both of the answers that each of the defendants had a large mortgage upon its property, but it was averred that these mortgages did not cover all of their several properties.

One of the defenses interposed by the Ducktown Sulphur, Copper & Iron Company was that of former suit pending as to certain of the complainants.

The chancellor overruled the latter defense, and, upon the ground of the existence of the mortgages referred to, rendered a decree, the substance of which was that he required the defendants to give bond to cover such amount of damages as might be found due from them, and, upon this bond being given, declined to grant an injunction, but referred the cause to the master to ascertain and report the amount of damages due.

On appeal the decree of the chancellor was affirmed by the court of chancery appeals as to his action on the demurrer and the plea of former suit pending, but in

other respects reversed, and the perpetual injunction asked for awarded, except as to Avery McGhee. The bill was dismissed as to him for the reason that he had previously caused it to be dismissed on his own motion as to the Ducktown Sulphur, Copper & Iron Company; the court holding that he could not thereafter proceed against the other defendant.

The bill in the third case appearing in the caption of this opinion—the Farner case—was filed on August 24, 1902. Its purpose was to obtain a perpetual injunction against the operation of the works of the defendant Tennessee Copper Company. After issue was made and proof heard, the chancellor declined to grant the relief sought, and dismissed the bill.

On appeal the court of chancery appeals likewise reversed this decree of the chancellor, and granted the perpetual injunction asked for.

These several decrees were rendered in the court of chancery appeals on a majority opinion; Judge Barton, of that court, each time dissenting.. In the second case he filed a very earnest and able dissenting opinion.

From the several decrees of the court of chancery appeals an appeal was prayed by the two defendants and by complainant McGhee to this court, wherein the causes all now stand for final adjudication.

Before passing to the chief question in the case, we shall briefly refer to the preliminary questions above indicated:

1.   The rule is that two or more persons may unite

in a bill to enjoin a nuisance, although their lands are separate and distinct from each other, where it appears that the lands of all are affected in substantially the same way by the nuisance complained of. 14 Enc. Pl. & Pr., p. 1138; *Rowbotham* v. *Jones*, 47 N. J. Eq., 337, 20 Atl., 731, 19 L. R. A., 663; *Jung* v. *Neraz*, 71 Tex., 396, 9 S. W., 344; *Palmer* v. *Waddell*, 22 Kan., 352. So, when several persons, acting independently, combine to produce a nuisance, such persons may be joined as defendants in a suit for injunctive relief. 14 Enc. Pl. & Pr., p. 1141 (citing *Thorpe* v. *Brumfitt*, L. R., 8 Ch., 650; *Woodycar* v. *Schaefer*, 57 Md., 1, 40 Am. Rep., 419; *People* v. *Gold Run Ditch, etc., Co.*, 66 Cal., 138, 4 Pac., 1152, 56 Am. Rep., 80; *Kingsbury* v. *Flowers*, 65 Ala., 479, 39 Am. Rep., 14). But there can be joinder neither of complainants nor of defendants for the purpose of recovering damages for the injuries caused by such nuisance. 14 Enc. Pl. & Pr., p. 1139 (citing on the first point *Demarest* v. *Hardham*, 34 N. J. Eq., 469; *Morris, etc., R. Co.* v. *Prudden*, 20 N. J. Eq., 530; *Rowbotham* v. *Jones*, 47 N. J. Eq., 337, 20 Atl., 731, 19 L. R. A., 663; *Fogg* v. *Nevada-California-Oregon R. Co.*, 20 Nev., 429, 23 Pac., 840), and page 1141 (citing on the second point *Sadler* v. *Great Western R. Co.*, 2 Q. B., 688) And on the last point, as to the misjoinder of defendants, see our own case of *Swain* v. *Tenn. Copper Co. et al.*, 3 Cates, 430, 78 S. W., 93, where the subjtct is extensively discussed in an opinion by Mr. Justice Shields.

In view of these authorities, there can be no doubt

Madison v. Copper Co.

that the bill in the second case was amenable to the demurrers above referred to, in respect of the claim for damages preferred therein; that is, if the demurrers had been so framed as to raise objection to that defect alone. They were not so framed, however, but were directed to the whole bill. They were not good to the whole bill, and must therefore be overruled.

2. As to the plea of former suit pending: This applies to only three of the complainants in the second bill, Carter, W. M. Madison, and Margaret Madison; nor do we think the plea is good as to them. The first suit is against only one of the two defendants to the second suit, and the latter is based upon a cause of action which the complainants referred to had the right to prefer against the two. Moreover, the latter suit contains a claim for damages, while the first one does not. So, in an event, the second suit, being the broader and containing more matter of litigation, would be allowed to stand. "If two bills be found in the same court for the same purpose," said Mr. Justice Cooper in *Parmelee* v. *Railroad Company,* "the rule is to allow that bill to proceed which embraces the most matter of litigation. [Citing *Croft* v. *Worthley,* 1 Ch. Cas., 241; *Rigby* v. *Stringways,* 2 Phill., 175.] The same rule should be applied where the two bills have been filed in different courts of the same government, having concurrent jurisdiction. [Citing *Moore* v. *Holt,* 3 Tenn. Ch., 141; *Schuehle* v. *Reiman,* 86 N. Y., 273.] The present bill embracing an additional matter of litigation, the proper

course was to have overruled the plea altogether; either party being at liberty to bring the result of the former litigation, if first tried, before the court by supplemental .bill, and the complainant being subject to the control of the court in the matter of costs for unnecessary lit-igation. [Citing *Moore* v. *Holt,* 3 Tenn. Ch., 141.]" 13 Lea, 600, 602.

3. As to the appeal of Avery McGhee: We think the court of chancery appeals was in error in dismissing the bill in the second case as to him, on the ground stated. At most, that court should have directed a remand as to him for the purpose of separating his cause from that of the other proceeding against the two defendants. He must be treated, therefore, as before this court for the purpose of settling his rights on the general questions involved in the controversy.

4. We shall now state the principles which, as we conceive, should control the merits of the controversy involved in the several cases before the court:

While there can be no doubt that the facts stated make out a case of nuisance, for which the complainants in actions at law would be entitled to recover damages (*Swain* v. *Ducktown Sulphur, Copper & Iron Co.,* su-pra), yet the remedy in equity is not a matter of course (*Parker* v. *Winnipiseogee Lake, etc., Co.,* 2 Black [U. S.] 545, 17 L. Ed., 333). Not only must the bill state a proper case, but the right must be clear (*Holsman* v. *Boiling Springs Bleaching Co.,* 14 N. J. Eq., 335, 343; *Duncan* v. *Hayes,* 22 N. J. Eq., 25), and the injury must

Madison v. Copper Co.

be clearly established (*Hackensack Improvement Co.* v. *R. Co.,* 22 N. J. Eq., 94), as in doubtful cases the party will be turned over to his legal remedy (*Hilton* v. *Earl of Granville,* Craig & Ph., 284, 292; *Gilbert* v. *Mickle,* 4 Sandf. Ch., 357; *McCutchen* v. *Blanton,* 59 Miss., 116) ; and, if there is a reasonable doubt as to the cause of the injury, the benefit of the doubt will be given to the defendant, if his trade is a lawful one, and the injury is not the necessary and natural consequence of the act (*Owen* v. *Phillips,* 73 Ind., 284; *Gilbert* v. *Showerman,* 23 Mich., 448-452; *Tuttle* v. *Church* (C. C.), 53 Fed., 422, 427; *R. Co.* v. *Ward,* 2 Black, 485, 495, 17 L. Ed., 311; *Parker* v. *Winnipiseogee Lake, etc., Co.,* 2 Black, 545, 552, 17 L. Ed., 333; *Irwin* v. *Dixon,* 9 How., 10, 28, 13 L. Ed., 25; *Rhodes* v. *Dunbar,* 57 Pa., 274, 98 Am. Dec., 221) ; and, if the injury can be adequately compensated at law by a judgment for damages, equity will not interfere (*Weakley* v. *Page,* 102 Tenn., 178, 53 S. W., 551, 46 L. R. A., 552; *Clack* v. *White,* 2 Swan, 540; *Brew* v. *Van Deman,* 6 Heisk., 433, 440; *Holsman* v. *Boiling Springs Bleaching Co.,* supra).

And the equitable remedy by injunction must be applied for with reasonable promptness. There must be no laches. *Caldwell* v. *Knott,* 10 Yerg., 210, 212; *W. J. Stamps et al.* v. *W. H. Hartford et al.,* MS., Nashville, December term, 1898; *Bassett* v. *Company,* 47 N. H., 438 441; *Goodall* v. *Crofton,* 33 Ohio St., 271, 31 Am. Rep., 535; *Whitney* v. *Union Ry. Co.,* 11 Gray (Mass.), 359, 71 Am. Dec., 715; *Reid* v. *Gifford,* 6 Johns. Ch., 19;

*Clifton Iron Co.* v. *Dye,* 87 Ala., 468, 471, 472, 6 South., 192; *Traphagan* v. *Jersey City,* 29 N. J. Eq., 206; Morris & C. Ry Co. v. *Prudden,* 20 N. J. Eq., 530; *Sprague* v. *Rhodes,* 4 R. I., 304; *Grey* v. *R. Co.,* 1 Grant, Cas. (Pa.), 412; *Stewart Wire Co.* v. *Lehigh Coal & Nav. Co.,* 203 Pa., 479, 53 Atl., 352; *Powers' Appeal,* 125 Pa., 186, 17 Atl., 254, 11 Am. St. Rep., 882; *Dana* v. *Valentine,* 5 Metc. (Mass.), 8; *Sheldon* v. *Rockwell,* 9 Wis., 166, 76 Am. Dec., 265; *Parker* v. *Winnipiseogee Lake, etc., Co.* supra; *Tuttle* v. *Church,* supra; *Tuttle* v. *Brightman* (C. C.), 53 Fed., 429; *Bankhardt* v. *Houghton,* 27 Beav., 425; *Great Western R. Co.* v. *Oxford, etc., R. Co.,* 3 De G., M. & G., 341, 359-361; *Williams et al* v. *Earl of Jersey,* 1 C., R. & Ph.· (18 Eng. Ch. Rep.), 91; *Wood* v. *Sutcliffe,* 8 Eng. L. & Eq., 217, 2 Simmons (N. S.), 163; *Weller* v. *Smeaton,* 1 Cox, Cases in Eq., 102; *Cooper* v. *Hubbuck,* 30 Beav., 160, 166, 167; *Birmingham Canal Co.* v. *Loyd,* 18 Ves., 515; *Graham* v. *Birkenhead, etc., Ry. Co.,* 48 Eng. Ch. Rep., 114, 2 M. & G., 146; *Atty.-Gen.* v. *Sheffield Gas Consumers' Co.,* 3 De Gex, M. & G., 304, 52 Eng. Ch. Rep., 237.

In the last-cited case a delay of only nine months was held a sufficient time to estop the complainant, contracts and engagements having been entered into in furtherance of the work by the defendant during that period. In *Graham* v. *Birkenhead, etc., Ry. Co.,* a delay of eighteen months was held sufficient, there having been expenditures made by the defendant in the meantime. In *Birmingham Canal Co.* v. *Lloyd* a delay of two years

was held sufficient, there having been an expenditure of £10,000 by the defendant in that time. In *Cooper* v. *Hubbuck* and *Weller* v. *Smeaton* it appears there was a simple delay of three years. In *Clifton Iron Co.* v. *Dye* a delay of three years, and, as to part of the works two years, was held sufficient to estop; expensive improvements having been made in the meantime. In *Whitney* v. *Union Ry. Co.* there was a delay of four years, with improvements made in the meantime. In *Goodall* v. *Crofton* there was a delay of ten years, with improvements made in the interim by the defendant. In *Bassett* v. *Company* a delay of seven or eight years was held sufficient to estop the complainant, the defendant during that period having expended large sums in extending its work. In *Caldwell* v. *Knott* and in *Stamps* v. *Hartford* a simple delay of ten years was held sufficient laches to bar equitable relief.

Upon laches appearing, a court of equity will be justified in withholding relief and leaving the party to his rights at law. "A party may by laches," says Wood, "deprive himself of an equitable remedy against a nuisance. Thus if a party sleeps on his rights and allows a nuisance to go on without remonstrance, or rather without taking measures either by suit at law or in equity to protect his rights, and allows the party to go on making large expenditures about the business which constitutes the nuisance, he will be regarded as guilty of such laches as to deprive him of equitable relief, par-

ticularly until the right is first settled at law. And when the delay is also coupled with an acquiescence he will be deprived of all equitable relief, and may be placed in a position where the court will enjoin him from proceeding against the nuisance at law, or even to prevent the recovery of a judgment obtained therefor in a court of law." Wood, Nuisance, section 804.

And recently the supreme court of Pennsylvania said (quoting with approval the language of a well-known text-book) : "Relief by injunction is not controlled by arbitrary or technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court. Where a party seeks the intervention of a court of equity to protect his rights by injunction, the application must be seasonably made, or the rights may be lost, or at least so far as equitable intervention is concerned. It is a rule practically without exception that a court of equity will not grant relief by injunction where the party seeking it, being cognizant of his rights, does not take those steps which are open to him, but lies by and suffers his adversary to incur expenses and enter into burdensome engagements which would render the granting of an injunction against the completion of the undertaking, or the use thereof when completed, a great injury to him. A suitor who by his laches has made it impossible for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy." *Stewart Wire Co.* v. *Lehigh C. & N. Co.,* supra.

Madison v. Copper Co.

"A court of equity," said Lord Camden, "which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore from the beginning of this jurisdiction there was always a limitation to suits in this court." 3 Brown, Ch. Rep., 640, note.

The matter of laches will be considered by the court in connection with the other facts of the case by which its discretion is to be guided. "It will consider all the circumstances, the consequences of such action, and the real equity of the case." *Parker* v. *Winnipiseogee Lake, etc., Co.,* 2 Black, 545, 552, 553, 17 L. Ed., 333; *Owen* v. *Phillips, Goodall* v. *Crofton, Clifton Iron Co.* v. *Dye,* and *Tuttle* v. *Church,* supra.

And in *Stewart Wire Co.* v. *Lehigh C. & N. Co.,* supra, it was held that the defense of laches might be applied as a bar to equitable relief in the supreme court, although not raised in the pleadings or mooted in the court below, where the laches appeared from the facts contained in the record. 203 Pa., 478, 53 Atl., 352. See also, *Potts* v. *Alexander* (C. C.), 118 Fed., 885.

We are of opinion that the complainants in the first bill are estopped to claim equitable relief against the defendant thereto by their laches. It is clearly to be in-

ferred from the facts found by the court of chancery appeals, and above noted, that these complainants had been suffering the injuries now complained of for ten years when the bill was filed, without making any complaint of them in any forum. In the meantime the defendant had expended several hundred thousand dollars in making improvements in the plant, and the nature and source of the injury were such that the complainants could not be mistaken as to the cause or extent of it. Under such circumstances, we are of the opinion that it would be inequitable to grant the severe remedy of injunction, but that the said complainants should be left to their actions for damages. This applies also to Carter, W. M. Madison, and Margaret A. Madison, in their capacity of complainants in the second bill, in so far as that bill asks relief for them against the Ducktown Sulphur, Copper & Iron Company.

It does not apply to these complainants, however, in so far as they seek relief against the Tennessee Copper Company, nor to Avery McGhee or Isaac Farner, seeking relief against the latter company, inasmuch as the bill in the second case was filed within about two years ($26\frac{1}{2}$ months) after the Tennessee Copper Company began roasting ore, and the bill in the third case was filed within about one year (sixteen months) from the date referred to, and it does not appear that any improvement or special expenditures were made in the meantime.

So, as to these parties, in the aspect above presented,

Madison v. Copper Co.

the question remains to be determined whether, on the facts stated, they should be granted the perpetual injunction asked for.

In addition to the principles already announced, the following general propositions seem to be established by the authorities: If the case made out by the pleadings and evidence shows with sufficient clearness and certainty grounds for equitable relief it will not be denied because the persons proceeded against are engaged in a lawful business. (*Stockport Waterworks Co.* v. *Potter*, 7 H. & N., 159; *Respublica* v. *Caldwell*, 1 Dall., 161, 1 L. Ed., 77; *Tipping* v. *St. Helens Smelting Co.*, 11 H. L. Cas., 642; *Atty.-Gen.* v. *Colny Hatch Lunatic Asylum*, 4 L. R., Ch. App., 478; *Crossley* v. *Lightowler*, 3 L. R., Eq., 279, 2 L. R., Ch. App., 478; *Goldschmidt* v. *Tunbridge Wells Imp. Co.*, 1 L. R. Eq., 161, 169; *Broadbent* v. *Imperial Gas Co.*, 7 De G. & M., 436, 443, 462; *Spokes* v. *Banbury Board of Health*, L. R., 1 Eq., 47, 51; *Goodson* v. *Richardson*, 9 L. R., Ch., 223, 224; *Robinson* v. *Baugh*, 31 Mich., 291; *Susquehanna Fertilizer Co.* v. *Malone*, 73 Md., 268, 282, 20 Atl., 900, 9 L. R. A., 737, 25 Am. St. Rep., 595), or because the works complained of are located in a convenient place, if that place be one wherein an actionable injury is done to another (*Susquehanna Fertilizer Co.* v. *Malone*, 73 Md., 268, 277, 278, 20 Atl., 900, 9 L. R. A., 737, 25 Am. St. Rep., 595, and cases cited; *Tipping* v. *St. Helens Smelting Co.*, supra); nor will the existence of another nuisance of a similar character at the same place furnish a ground for deny-

ing relief if it appear that the defendant has sensibly contributed to the injury complained of (*Crossly* v. *Lightowler,* supra; *Crump* v. *Lambert,* 3 L. R., Eq., Cas., 409; *Tipping* v. *St. Helens Smelting Co.,* supra; *Robinson* v. *Baugh,* supra; *Atty.-Gen.* v. *Steward,* 20 N. J. Eq., 415; *Woodyear* v. *Schaefar,* 57 Md., 1, 40 Am. Rep., 419). Nor is it a question of care and skill, but purely one of results. *Fletcher* v. *Rylands,* 1 L. R., Exch., 289; *Cahill* v. *Eastman,* 18 Minn., 324 (Gil., 292), 10 Am. Rep., 184; *Aldrich* v. *Howard,* 8 R. I., 246.

But there is one other principle which is of controlling influence in this department of the law, and in the light of which the foregoing principle must be weighed and applied. This is that the granting of an injunction is not a matter of absolute right, but rests in the sound discretion of the court to be determined on a consideration of all of the special circumstances of each case, and the situation and surroundings of the parties, with a view to effect the ends of justice.

A judgment for damages in this class of cases is a matter of absolute right, where injury is shown. A decree for an injunction is a matter of sound legal discretion, to be granted or withheld as that discretion shall dictate, after a full and careful consideration of every element appertaining to the injury.

These propositions will be found to be substantially confirmed and enforced in the following authorities:

In *Clack* v. *White* (a nuisance case) it is said: "It is also admitted in defendant's answer that the way was

opened and that he afterwards obstructed and closed it. So that both the legal title to the way and its obstruction by defendant appear in the present record. But it does not follow as a corollary that therefore the injunction will lie. The special injunction is not a writ of right, but it rests in the sound discretion of the court; and hence, Mr. Story says, 'No injunction will be granted whenever it will operate oppressively or inequitably or contrary to the real justice of the case.' 2 Story, Eq. Jur., section 959." 2 Swan, 545.

In Wood on Nuisances (3d Ed.), p. 1182, it is said:

"The true intent of a court of equity being to do justice between parties, it will not issue a restraining order except where the rights of the parties demand it, and, in determining this question, all the circumstances of location, the effect of the act claimed to be a nuisance, and the effect upon the defendant's business and interests will be considered; and, while the usefulness of the business, or its importance, magnitude, or extent, will not in all cases prevent interference, yet, if the injury on the one hand is small and fairly compensable in damages, and the loss to the other party would be large and disastrous, an injunction will be refused and the party left to his legal remedy."

In *Demarest* v. *Hardham* it is said:

"The important question presented by the case is, does the manner in which the defendant conducts his business interfere with or injure the business of the complainants to such an extent as to create a nuisance

which it is the duty of a court of equity to enjoin? The defendant's business is not only lawful, but necessary. It is carried on in a part of the city of Newark devoted almost exclusively to manufacturing and business purposes. No objection can therefore be made to it on the ground that its location is not a fit one. It is not necessarily or inherently noxious, offensive, or injurious. It should not, therefore, be enjoined except under a stern necessity. The complainants ask that it be absolutely interdicted, their prayer being that the defendant be restrained from further operating his engine and presses. To grant their prayer is to destroy the defendant's business. Power attended with such disastrous consequences should always be exercised sparingly and with the utmost caution. All doubts should be resolved against its exercise. *Attorney-Gen.* v. *Nicholas,* 16 Ves., 338. Relief by injunction in such cases is not a matter of right, but rests in discretion. If the legal right is not clear, or the injury is doubtful, eventual, or contingent, equity will give no aid. *Richard's Appeal,* 57 Pa., 105, 98 Am. Dec., 202; *Rhodes* v. *Dunbar,* 57 Pa., 274, 98 Am. Dec., 221; *Huckenstine's Appeal,* 70 Pa., 102, 10 Am. Rep., 669.

"And so, too, the court is bound to compare consequences. If the fact of an actionable nuisance is clearly established, then the court is bound to consider whether a greater injury will not be done by granting an injunction, and thus destroying a citizen's property and taking away from him his means of livelihood, than will result from a refusal, and leaving the injured party to his or-

Madison v. Copper Co.

dinary legal remedy; and if, on thus contrasting conse-
quences, it appears doubtful whether greater injury will
not be done by granting than by withholding the injunc-
tion, it is the duty of the court to decline to interfere.
*Hilton* v. *Earl of Granville,* 1 Cr. & Ph., 283. The duty
of granting or refusing an injunction is a matter resting
in sound discretion. It should never be granted when it
will operate oppressively or contrary to the real justice
of the case, or where it is not the fit or appropriate
method of redress under all the circumstances of the
case, or when it will or may work fatal injury to the per-
son enjoined. *Jones* v. *City of Newark,* 11 N. J. Eq.,
452." 34 N. J. Eq., 469. See, also, *Chartiers Block Coal
Co.* v. *Mellon* (Pa.), 25 Atl., 597, 18 L R. A., 702, 34 Am.
St. Rep., 645; *Fesler* v. *Brayton* (Ind.), 44 N. E., 37, 32
L. R. A., 578.

In *Powell* v. *Bentley & Gerwig Furniture Co.* (W.
Va.), it is said:

"Although a court of equity in such cases follows
precedent and goes by rule, as far as it can, yet it follows
its own rules, and among them is the one that to abate
or restrain in case of nuisance is not a matter of strict
right, but of orderly and reasonable discretion, accord-
ing to the right of the particular case, and hence will
refuse relief, and send the party to a court of law, when
damages would be a fairer approximation to common
justice, because to silence a useful and costly factory is
often a matter of serious moment to the State and town

as well as to the owner." 12 S. E., 1087, 12 L. R. A., 54-56.

In *Clifton Iron Co.* v. *Dye* it is said:

"Counsel have pressed the proposition that mere convenience in the use of its property by the company does not entitle it to pour down upon the appellee's land, and into the stream on his land, the debris from the washers erected by it, and we think the contention is reasonable. But it is not every case of nuisance or continuing trespass which a court of equity will restrain by injunction. In determining this question the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction. *Wood* v. *Sutcliffe*, 2 Sim. (N. S.), 162; *E. & W. R. Co.*, v. *E., T., V. & G. R. Co.*, 75 Ala., 275; *C. & W. R. Co.* v. *Witherow*, 82 Ala., 190, 3 South., 23; 1 High on Injunc., section 498; *Davis* v. *Sowell*, 77 Ala., 262; *Torrey* v. *Camden R. Co.*, 18 N. J. Eq., 293; McBryde v. *Sayre*, 86 Ala., 458, 5 South., 791, 3 L. R. A., 861.

"The court will take notice of the fact that in the development of the mineral interests of this State, recently made, very large sums of money have been invested. The utilization of these ores, which must be washed before using, necessitates in some measure the placing of sediment where it may flow into streams which constitute the natural drainage of the section where the ore banks are situated. This must cause a deposit of sediment on the lands below, and, while this

invasion of the rights of the lower riparian owner may produce injury, entitling him to redress, the great public interests and benefits to flow from the conversion of these ores into pig metal should not be lost sight of. As said by the vice-chancellor in *Wood* v. *Sutcliffe,* supra, 'Whenever a court of equity is asked for an injunction in cases of such nature as this [a bill to enjoin the pollution of a stream] it must have regard not only to the dry, strict rights of the plaintiff and defendant, but also to the surrounding circumstances.'" 87 Ala., 471, 6 South., 192.

A recent statute passed in this State (Acts 1901, p. 246, c. 139) gives legislative expression to the same considerations of duty and public policy which are contained in the foregoing citations.

Before setting out this statute, it is necessary that we reproduce the section of the Code of 1858 which it amends. That section reads as follows:

"Sec. 3403. In all suits brought for the recovery of damages resulting from any nuisance, and the finding that the matter complained of is a nuisance, the court may immediately upon petition of the plaintiff in writing, order the nuisance to be abated in the same manner and to the same extent as the chancery courts, without resort to a court of equity for that purpose." Shannon's Code, section 5158.

The act referred to reads as follows:

"An act to amend section 3403 of the Code of Tennessee, 1858 [Shannon's Code, section 5158], and to au-

thorize courts to determine in assessing damages for injuries to real estate, whether the nuisance complained of is a work of public utility and to give to said courts discretionary powers in respect to the abatement of such nuisance.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that section 3403 of the Code of Tennessee, 1858 [Shannon's Code, section 5158], be so amended as to read as follows: In all suits brought for the recovery of damages resulting from any nuisance and the finding that the matter complained of is a nuisance, the court exercising a sound discretion may immediately upon petition of plaintiff, order or decline to order the nuisance to be abated.

"Sec. 2. Be it further enacted, that on the trial of any action for the recovery of damages as above said, either party may show by proof the extent if any of the injury or injuries complained of, and how the alleged nuisance is caused or originates.

"Sec. 3. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

"Passed April 16, 1901.

"Approved April 17, 1901."

When it is remembered that, on a bill filed in equity to obtain a permanent injunction against a nuisance (that is, to abate it), the court may, as incidental to the main relief sought, ascertain and allow damages for the injury already done (*Richi* v. *Chatt., etc., Co.,* 105

Tenn., 651, 653, 58 S. W., 646; *Farris et al.* v. *Dudley,* 78 Ala., 124, 56 Am. Rep., 24; *Disher* v. *Disher,* 45 Neb., 100, 63 N. W., 368; *N. Y., etc., R. Co.* v. *Schuyler,* 34 N. Y., 30; *White* v. *Mechanics' Bldg. Fund Assn.,* 22 Grat., 233; *Todd* v. *Bowyer,* 1 Munf., 447, 10 Enc. Pl. & Pr., p. 1097), it is perceived that the remedy by petition granted in section 3403, Code 1858, in an action at law, is in all respects equivalent to the remedy by injunction in equity, and further that the only difference is that in the first action the principal object of the suit is the recovery of damages, with the final injunction or abating order as supplementary or additional relief while in the second the obtaining of the injunction is the principal relief sought, and the recovery of damages is supplementary or additional thereto. In other words, by the section of the Code above quoted the two courts were put upon a substantial parity in dealing with nuisances, in respect of the granting of final relief in such cases.

It is observed that in section 3403, Code 1858, courts of law, abating nuisances, are required to proceed "upon petition of plaintiff in writing in the same manner and to the same extent as the chancery court, without resort to a court of equity, for that purpose." The petition in such a case is the exact equivalent of a bill in equity.

It cannot be doubted, therefore, that although the amending acts above copied purport, in terms, to apply only to suits brought for the recovery of damages resulting from nuisances, the purpose was to declare the leg-

islative will in respect of the use of the injunctive pow-
er in nuisance cases, when sought to be used in effecting
final relief, and to ordain that in administering this re-
lief the court should exercise a sound discretion, and
either "order or decline to order the nuisance to be
abated," as such sound discretion should dictate.    This
act must be regarded as declaring the policy of the State
upon the subject referred to.    It is perceived from the
caption that the legislature had in view the public util-
ity of enterprises attacked on the ground of nuisance,
and authorized the court to grant or withhold the in-
junction as a wise discretion might suggest or warn.

The question now to be considered is, what is the
proper exercise of discretion, under the facts appearing
in the present case? Shall the complainants be granted,
in the way of damages, the full measure of relief to
which their injuries entitle them, or shall we go further,
and grant their request to blot out two great mining
and manufacturing enterprises, destroy half of the taxa-
ble values of a county, and drive more than 10,000 peo-
ple from their homes? We think there can be no doubt
as to what the true answer to this question should be.

In order to protect by injunction several small tracts
of land, aggregating in value less than $1,000, we are
asked to destroy other property worth nearly $2,000,000,
and wreck two great mining and manufacturing enter-
prises, that are engaged in work of very great impor-
tance, not only to their owners, but to the State, and to
the whole country as well, to depopulate a large town,

and deprive thousands of working people of their homes and livelihood, and scatter them broadcast. The result would be practically a confiscation of the property of the defendants for the benefit of the complainants—an appropriation without compensation. The defendants cannot reduce their ores in a manner different from that they are now employing, and there is no more remote place to which they can remove. The decree asked for would deprive them of all of their rights. We appreciate the argument based on the fact that the homes of the complainants who live on the small tracts of land referred to are not so comfortable and useful to their owners as they were before they were affected by the smoke complained of, and we are deeply sensible of the truth of the proposition that no man is entitled to any more rights than another on the ground that he has or owns more property than that other. But in a case of conflicting rights, where neither party can enjoy his own without in some measure restricting the liberty of the other in the use of property, the law must make the best arrangement it can between the contending parties, with a view to preserving to each one the largest measure of liberty possible under the circumstances. We see no escape from the conclusion in the present case that the only proper decree is to allow the complainants a reference for the ascertainment of damages, and that the injunction must be denied to them, except in the qualified manner below indicated.

In the exercise of its discretion to refuse the injunction, the court has power to impose upon the defendants, as a condition annexed to such refusal, that they shall pay such damages as may have accrued to the several complainants up to the filing of the bills below, and to require of the defendants, inasmuch as they have resting upon their property the mortgages referred to in the statement of facts, to execute, as a security for the payment of such damages, a bond, each, with solvent surety, in favor of each of the complainants suing such company, in such amount or penalty as the chancellor may order on the remand during the next or succeeding term of the chancery court of Polk county, within such time as the chancellor may fix. In default of the execution of such bonds, the injunction prayed for in the bills will be issued, to continue during such default. On the remand an order will be entered separating the demand of each complainant into a distinct case against such defendant complained of in his or her bill, to the end that damages may be separately assessed, and an order of reference will be made in each such case. These orders will include those complainants against whom the defense of laches has been sustained as well as others; such defense not operating to bar damages, and the court having power to so temper the judgment of laches against them as to permit them also to have the benefit of the conditional injunctive provision above provided to secure damages.

There need be little difficulty in the assessment of damages against the two companies separately. These rules are indicated in *Swain* v. *Tenn. Copper Co.,* supra.

The costs of the appeal in each of the three cases above styled will be paid as follows: One-half by the complainants therein, and one-half by the defendant or defendants therein. The costs of the court below will be paid as may be hereafter decreed by the chancellor.

Let a decree be entered and the causes remanded as above indicated.