| 175 | 188 |
|-----|-----|
| s175 | 200 |
| 175 | 188 |
| s180 | 628 |
| 175 | 188 |
| 184 | 236 |
| 175 | 188 |
| 188 | 66 |
| 188 | 495 |
| 175 | 188 |
| 27 SC | 443 |
| 175 | 188 |
| 30 SC | 551 |
| 175 | 188 |
| f219 | 573 |
| 175 | 188 |
| 222 | 225 |
| f224 | 502 |

# Henry S. Heilman, Appellant, *v.* The Lebanon & Annville Street Railway Company.

*Street railways—Laying tracks on public roads—Injunction—Damages.*

A street railway was laid upon a public township road without the consent of the township authorities, and without compensation to the landowners. During the construction of the road an owner of abutting property filed a bill in equity which looked to compensation. Two years after the completion of the road he amended his bill so as to pray for an injunction. In the meantime the township authorities had approved and ratified the use of the highway. *Held,* (1) that in view of the rights of the public in the road, and of the large outlay made by the company, and of the delay of the plaintiff in asserting his rights, an injunction should not be awarded; (2) that the plaintiff was entitled to damages, and, in ascertaining such damages, inquiry should be made into the practicability of so constructing causeways or crossings on the railway as to reduce to the smallest practicable extent the inconvenience and obstruction suffered by the plaintiff in going from the wagon road to his buildings and fields.

Argued March 5, 1896.   Appeal, No. 182, Jan. T., 1896, by plaintiff, from decree of C. P. Lebanon Co., No. 7, Equity Docket of 1891, on bill in equity.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Affirmed.

Bill in equity for damages and for injunction.

This case, with Henry S. Heilman et al. against the same defendant, No. 9 Equity Docket of 1891, infra, 200, was referred to Chas. M. Zerbe, Esq., as master and examiner, who took the testimony and made report, recommending that in both cases the defendant be enjoined and restrained from entering upon the lands of the plaintiffs, lying in the roadway of said turn-

pike company; that it be enjoined and restrained from constructing and operating its railway, and that it be ordered and commanded to forthwith remove such parts of its railway as were already constructed in said turnpike road on the lands of said plaintiffs, and that it restore said turnpike road along and over the lands of the plaintiffs to the same condition that it was in before said railway was located and constructed.

The material facts appear by the following opinion of EHR-GOOD, P. J.

These two cases were referred to the same master, the testimony submitted, applied to both so far as applicable, and considered and passed upon by him in one report. We will, therefore, so far as can be done, also consider the two cases together.

. *      *      *      *      *      *      *      *      *

The facts as found by the master and material to the questions now before the court are substantially as follows : That the plaintiffs are the owners in fee of the lands referred to in their respective bills of complaint, abutting on the southern edge of the Berks & Dauphin Turnpike Company's roadway in North Cornwall township, Lebanon county, Pa., and also the owners in fee of the land over and upon which said turnpike road is located and constructed adjacent to their inclosed and other lands respectively, in said township.

That the Lebanon & Annville Street Railway Company, the defendant in both bills, is a corporation, chartered under the provisions of the act of May 14, 1889, P. L. 211, etc., and has, without the consent of the local authorities and of these plaintiffs, constructed, and since about December 1, 1891, is maintaining and operating a single track street railway between Lebanon and Annville, a part of which is on and along the south side of said turnpike, the fee of which (subject to the easement of said turnpike company) is in the plaintiffs who are the owners of the abutting land.

That said turnpike has a width of about fifty (50) feet, the middle of which to the width of about twenty-one (21) feet is graded and macadamized.

That the grading of defendant's railway substantially corresponds with the macadamized portion of said turnpike and not with the natural surface of the ground, thereby interfering with,

and in some places destroying, access to plaintiffs' land and in-
terfering with access to their buildings.

That no compensation was made or paid or secured to be
made or paid to plaintiffs by defendant for such entry upon,
taking and use of their said lands lying within the right of way
and roadway of said turnpike company, nor for the injuries
resulting to their other lands adjoining and abutting on said
turnpike by reason of the construction, maintenance and opera-
tion of said railway, and that no attempt has been made to set-
tle or agree with plaintiffs for said compensation and damages.

That said turnpike over the lands of the plaintiffs referred
to in both bills is a rural highway.

That on July 13, 1891, defendant entered upon Henry S.
Heilman's land in the roadbed of said turnpike, for the purpose
of constructing its roadway, and thereupon Mr. Heilman served
a notice upon the president of the defendant company and upon
the contractor for construction, to the effect that no compen-
sation had been made or paid to him for such taking of his
property by the defendant; that the said defendant, the said
contractor and those acting under him, were trespassers and
requiring them to desist, to leave the said premises and to
make compensation for damages already done.

That the defendant company proceeded with the construction
of its railway notwithstanding said notice and against the ex-
press wish of Mr. Heilman.

That on July 18, 1891, Mr. Heilman's injunction bill, affi-
davits, and bond were filed, on July 22, 1891, an amendment
to said bill was filed, and August 8, 1891, the printed bill as
amended was filed, the prayers of which are for an injunction
to restrain the defendant from the construction of said railway
until compensation shall have been made, etc., and for general
relief.

That said railway was constructed between August and De-
cember, 1891, and has been in operation over plaintiffs' land in
said turnpike since December 1, 1891.

That on October 23, 1893, plaintiff in bill No. 7 filed a motion
to amend his bill of August 8, 1891.

That on December 30, 1893, the court allowed the amend-
ment, and on July 20, 1894, the amended bill was filed.

That when the motion to amend was filed all of plaintiffs'

testimony in chief had been taken, and the defendant was about closing its testimony and the defendant's railway was constructed and in operation nearly two years.

That plaintiffs in bill No. 9 filed their injunction bill before defendant had entered upon their said lands for the purpose of constructing its railway.

The said turnpike being a rural highway it was incumbent on the defendant company to obtain the consent of the local authorities before it had any authority to construct its railway on and over the same, even if it had the consent of the turnpike company.    The plaintiffs being the owners in fee of the land in the turnpike roadway (subject to the right of way of said turnpike company) on and over which defendant's railway is located and constructed, and as such construction would impose an additional burden on said land, it was equally incumbent on defendant company to obtain the consent of these plaintiffs before it had any authority to construct its railway on and over their lands in said turnpike road.

" Street railway companies cannot reach the property owners either through the local authorities or by the right of eminent domain as the law now stands ; and it is not easy to see how such a company can protect itself in the use of country roads except by contract with every owner of property along the roads they wish to occupy : " Penna. R. R. v. Montgomery County Pass. Ry., 167 Pa. 71.

[Defendant's railway was constructed and is now maintained and operated without the consent of the plaintiffs and without the consent of the local authorities.    It was constructed without lawful authority and inflicted considerable injury on plaintiffs.] [2]    The local authorities have since the construction separately consented in writing to the maintenance and operation of defendant's railway and have ratified and confirmed its construction, but not according to the requisites of such consent as laid down by our Supreme Court in the case of Penna. R. R. v. Montgomery County Pass. Ry., supra.    " That in such cases the supervisors must be together and their action must be taken in their official capacity and should appear in the township book kept by the town clerk."    However, no objection has so far been made by the township authorities to the construction, maintenance and operation of said railway, and if made at this

time could not move a court of equity to lend its aid in the
destruction of defendant's railway.

Have the plaintiffs by their own acts placed themselves in
the same position as the local authorities? Such is the conten-
tion, in effect, of defendant company, and this is the important
question to be passed upon by the court in disposing of the
exceptions to the master's report. [That the plaintiffs have a
special private interest in the lands upon which the defendant's
railway is located, constructed and operated, which cannot be
taken from them without compensation is quite clear upon
principle and authority. It does not follow, however, that be-
cause they are entitled to compensation they are also entitled
to the relief for which they now contend, viz: a mandatory
injunction which would destroy defendant's railway.] [15]

In order to come to a correct conclusion as to the contention
now between the plaintiffs and defendant it is necessary to in-
quire into the actions of the plaintiffs at the time said railway
construction was commenced, and since, and to examine the
pleadings and contentions before the court and before the mas-
ter from the time of the filing of these bills.

Plaintiff in bill No. 7, in time notified defendant company
that unless damages were paid him or security given for the
payment of the same for injuries to his property he would object
to the construction of said railway.

The defendant not heeding this notice commenced the con-
struction of its road, and the plaintiff again promptly filed his
bill of complaint, and consistently with the allegations therein
contained specifically prayed the court to award a preliminary
injunction to restrain the defendant from constructing its rail-
way until his damages were paid or secured to be paid, and for
general relief.

A preliminary injunction was thereupon granted on July 18,
1891, and dissolved on July 30, 1891.

Plaintiffs in bill No. 9 filed their bill of complaint before the
construction of said railway was commenced along their abut-
ting lands, and in addition to the allegations contained in bill
No. 7, substantially aver that the act of May 14, 1889, P. L.
211, etc., is unconstitutional, because no provision is made for
the payment of damages for property taken, injured or destroyed,
and they pray for a preliminary injunction to restrain the defend-

ant from entering upon their premises and from constructing and operating its railway; or to restrain the defendant until their damages are paid or secured to be paid. A preliminary injunction was awarded, and on motion to continue the same was dissolved. The plaintiffs then appealed to the Supreme Court when the lower court was sustained, 145 Pa. 23.

The two cases were then referred to the master and the contention of the plaintiffs, until October 23, 1893, was that defendant's railway construction was unlawful, and the act of May 14, 1889, was unconstitutional because no provisions were made for the payment of damages to abutting landowners.

Before October 23, 1893, almost two years after said railway was constructed and in operation, the want of consent of the plaintiffs and local authorities was not made an issue to determine the right of the defendant to construct its railway, nor do plaintiffs' bills and prayers for relief warrant such an inference. It seems to us that the only inference that can be drawn from the actions of the plaintiffs, and from their pleadings, is that they do not object to the construction and operation of said railway, provided damages are paid, or secured to be paid, for resulting injuries to their property. This view is strengthened by a very significant objection to the introduction of testimony by solicitor for plaintiffs when he says: " I want to, before entering into this testimony, object to anything like the condition of the road for traveling over it. That isn't the question before the master, and I have objected to it before this, but it has never been passed upon, I believe. The only question before the master, as indicated in the bills of equity, is as to its interference (the road's interference) with our access to the pike and to our property." At that time said railway was constructed and in operation for a considerable length of time. The contention then was that said railway was there without lawful authority, because interfering with their access to their property without payment of damages therefor. The contention since the filing of the amended bill in No. 7 is that said railway is there without authority of law because without consent of the plaintiffs and the local authorities. If this had been the contention when these bills were filed, we are convinced that the status quo would have been preserved by preliminary injunction until final hearing, and the mass of testimony and exhibits

would have been unnecessary. It is quite evident that no such contention was made by plaintiffs in bill No. 9, before the Supreme Court, when they appealed from the decree of the lower court, refusing to continue the preliminary injunction.

The plaintiff in bill No. 7 insists that although his specific prayers for relief only claim damages, or security for damages, yet under the general prayer he is entitled to the relief now sought, and especially under his amended bill. [The averments in original bill No. 7 are only consistent with the specific prayers for relief.] [16] And a complainant cannot desert specific relief prayed and under the general prayer ask specific relief of another description, unless the facts and circumstances charged by the bill will consistently maintain that relief: Hiern v. Miller, 13 Ves. 114.

In the case of Thomas v. Ellmaker, 1 Parsons, 98, the rule on the subject of prayer for relief is stated as follows: " That although where the prayer does not extend to embrace all the relief to which the plaintiff may at the hearing show a right, the deficient relief may be supplied under the general prayer, yet such relief must be consistent with that specifically prayed as well as with the case made by the bill, for the court will not suffer a defendant to be taken by surprise, and permit a plaintiff to pass over the prayer he has made and take another decree, even though it be according to the case made out by the the bill."

"The relief to be granted under the general prayer must not only be consistent with the specific relief demanded, but must be sustained by the case made by the bill; and the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must appear to have been introduced into the bill for that purpose and not for the purpose of corroborating the plaintiff's right to the special relief prayed:" Del. & Hudson Canal Co. v. Pa. Coal Co., 21 Pa. 146.

In equity proceedings, the proofs and allegations must agree. A party can no more succeed on a case proved, but not alleged, than upon a case alleged but not proved.

[The amended bill in our opinion is more than an elaboration of the original bill, but contains new matter not contained in the original bill. In such cases the matter brought into the bill by way of amendment will not have relation to the time of

filing the original, but the suit will be considered as pending so far only from the time of the amendment.] [17]

[The plaintiffs in bill No. 9, so far as the pleadings are concerned, stand on a better footing than plaintiff in bill No. 7, but so far as their contention before the court and master is concerned, they stand upon exactly the same plane.] [18]

[Can we permit the plaintiffs in these two bills to so change their position and contention, two years after the construction and operation of defendant's railway, as to grant the relief now sought, viz: the destruction of said railway, and then say that we have done equity between the parties? We think not. The defendant company, with the decision of the lower court, and affirmed by our Supreme Court, in its favor, with street railway law unsettled as to rural highways, the plaintiffs only claiming and prosecuting their suits as for damages—has constructed its railway at large expense, with the honest conviction, we believe, that it had fully complied with the requirements of the act of May 14, 1889. That the public have acquired an interest in said railway since its construction and operation that ought to be protected, if it can be done under the existing circumstances, must not be overlooked. That a decree as recommended by the learned master would entail the loss of expenditures of large sums of money, and deprive the public of a convenient mode of travel and to which the damages suffered by plaintiffs are no comparison, cannot be questioned.] [19]

[This railway is constructed and in operation for a period of four years. The plaintiffs can be fully compensated in damages for all the injuries which they have suffered at the hands of the defendant.] [20]

[Under all the circumstances surrounding these two cases we are of opinion that it would be inequitable, at this time, to decree the destruction of this railway.] [21]

[And now December 31, 1895, the above causes came on to be heard upon bills, answers, replications, proofs, report of master and exceptions. It is ordered, adjudged and decreed in both cases that the Lebanon & Annville Street Railway Company, its agents, servants, contractors and employees be restrained and enjoined, after the expiration of fifteen days from the signing of this decree from maintaining, contracting (?) or operating on the roadway of the Berks & Dauphin Turnpike

Company, in front of the lands of the plaintiffs, by electricity
or otherwise, the railway now located on said turnpike, and that
after said date said railway company shall abate and remove such
part or portions of passenger railway with its embankment, fills,
ballasts, cross-ties, rails, fastenings and fittings, poles and wires
where the same have been constructed and are located and in
position on the Berks & Dauphin Turnpike Road in front of
said lands, and shall restore and leave the turnpike road in the
same condition and repair in which it was antecedently to the
construction of said railway, unless within said time, in the case
of Henry S. Heilman, plaintiff, No. 7 equity docket, 1891, a bond
shall have been filed in the sum of $10,000, with security to be
approved by the court, conditioned upon the payment of all dam-
ages to which his lands shall have been subjected, and will be
subjected by the construction, maintenance and operation on
said turnpike road, in front thereof, of the railway of the defend-
ant; and unless within said time in the case of Henry S. Heil-
man, John H. Snavely and Reilly R. Snavely, plaintiffs, No. 9
equity docket, 1891, the defendant company shall have filed a
bond in this court in the sum of $10,000, with security to be
approved by the court, conditioned for the payment to the plain-
tiffs of all damages to which their lands shall have been subjected
and will be subjected, by the construction, maintenance and
operation on said turnpike road, in front thereof, of the railway
of the defendant.

It is further ordered and decreed that in case bond shall be
filed, both of said cases shall be referred back to C. M. Zerbe,
Esq., the master, for the purpose of ascertaining the amount of
damages, if any, occasioned to the lands of the respective plain-
tiffs by the location, construction, maintenance and operation
of said railway on said turnpike road in front of the respective
properties.

It is further ordered and decreed that upon the final ascer-
tainment of said amount in each of said cases after appeal, if
either party shall take such appeal, the defendant company
shall pay to the respective plaintiffs the respective amounts thus
ascertained with costs.

It is further ordered and decreed that upon the filing such
bonds and after the payment of the amounts of damages as
finally ascertained, and all the costs reported by the master and

the taxed costs of the proceedings, the defendant shall be permitted to maintain and operate its railway on the turnpike in front of and along the lands of the respective plaintiffs, and that each case shall thereupon be dismissed.] [3]

*Errors assigned* among others were, (3) decree of the court; (2, 15–21) portion of opinion as above, quoting it.

*Bassler Boyer*, for appellant.—The court below had no other lawful way before it than to issue mandatory injunctions restraining such injurious acts, done by the corporation, without authority of law: Penna. R. R. Co.'s App., 115 Pa. 514; Edgewood R. R. Co.'s App., 79 Pa. 257; McCandless's App., 70 Pa. 210.

To affirm the decrees, this court must squarely overrule and reverse itself in Penna. R. R. v. St. Ry., 167 Pa. 62; Westhaeffer v. St. Ry., 163 Pa. 54; Plymouth Twp. v. Ry., 168 Pa. 181; Groff's App., 128 Pa. 631, and Allegheny City v. Ry., 159 Pa. 411; Penna. R. R. v. Montgy. Co. St. Ry., 167 Pa. 62.

A mandatory injunction is seldom granted before hearing, but where the case is clear and free from doubt, it may be had upon interlocutory application. The application need not be made before the hearing: Gale v. Abbott, 8 Jur. N. S. 987.

Relief is a matter which depends on the facts, and a claim for it, consistent with the case made out, can be made at any time, even in the Supreme Court: Darlington's App., 86 Pa. 512.

Under the constitution, the act of 1889, and the repeated decisions of this court, the consent of local authorities before construction is a condition precedent, without which the railway company cannot move: Larimer St. Ry. Co. v. Larimer, 137 Pa. 533; Penna. Ry. v. Ry., 167 Pa. 62; Allegheny City v. Ry., 159 Pa. 411; Plymouth Twp. v. Ry., 168 Pa. 181.

*John G. Johnson, S. P. Light* and *C. H. Killinger* with him, for appellee.—In view of the nature of the proceedings originally begun, and for years conducted by the appellants, and of the nature of the relief by them demanded, it would be inequitable now to decree a destruction of the appellee's railroad, or to do more than give compensation: Kerr on Injunc-

tions, 553; Castelli v. Cook, 7 Hare, 98; Cresy v. Beavan, 13 Simons, 99; Hilliard on Injunctions, 44; Watts' App., 78 Pa. 394; 1 Beach on Injunctions, 51, sec. 42; Traphagen v. Jersey City, 29 N. J. Eq. 206; High on Injunctions, 405; Hentz v. Long Island R., 13 Barb. 646; Erie R. R. v. Delaware etc. Ry. Co., 6 C. E. Green, 283; Goodin v. Cincinnati R. Co., 18 Ohio, 169.

A court of equity will not decree an injunction which will work an irreparable injury if the rights of those who demand it can be fully protected otherwise: Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 130; Lehigh Coal Nav. Co. v. Inter-County St. Ry., 15 Pa. C. C. 296; American Digest (1889), 2586; Jones v. City of Newark, 11 N. J. Eq. 456; Wood v. Sutcliffe, 2 Simons, N. S. 167; 2 Beach on Modern Eq. Jur. 716; McCreary v. Pennsylvania Canal Co., 5 Fed. Rep. 367; Richard's App., 57 Pa. 113; Dilworth's App., 91 Pa. 247; Parkinson's App., 78 Pa. 203; Pennsylvania R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62; Westhaeffer v. Ry., 163 Pa. 54.

OPINION BY MR. JUSTICE WILLIAMS, April 27, 1896:

The defendant company built its line of street railway, so far as it passed through the township of North Cornwall, without a particle of authority therefor. It not only disregarded the law, but it disregarded the rights of landowners along its line, and by locating its tracks outside the wagon track and grading up its foundation, interfered with access by the plaintiff and others to their buildings and fields from the wagon track. The plaintiff if he had promptly sought to enjoin the building of the road would have been entitled to a decree. His legal rights had been invaded with a high hand, and the courts would have restrained the defendant at the outset. But the plaintiff's bill filed in 1891 looked practically to compensation. The road was completed along its whole length in December, 1891, and has been in operation continuously from that time. Some two years after its completion, the bill was amended and the plaintiff gave prominence to his prayer for an injunction and insisted on the want of authority to build in 1891 when the building was actually done. But since then the whole situation has changed.

The township of North Cornwall has, as it is alleged, ap-

proved and ratified the occupation of its highways.    The expenditures necessary to the completion and equipment of defendant's road have been made.    The public has acquired an interest in the maintenance and operation of the completed line.    A chancellor must now consider a widely different question from that which would have been before him if an injunction had been insisted on before the road was completed.    A clear legal right . has been invaded in the construction of the defendant's roadway, but whether that road shall now be removed at this point, the operation of the line prevented, and a public inconvenience and loss inflicted is a question more for equitable than strictly legal determination.    An injunction is not of right.    It will not be issued when upon a broad consideration of the situation of all the parties in interest good conscience does not require it. The learned judge who sat as chancellor in this case was of opinion that, under all the circumstances, the issuing of an injunction at this time would work a much greater injury to the defendant and the public than that which the plaintiff has suffered, and for that reason he refused it on terms that will enable the plaintiff to recover for the actual injury done him.    We are not disposed to disturb this conclusion further than to suggest that the court while ascertaining the damages done to the plaintiff should also inquire into the practicability of so constructing causeways or crossings on the defendant's road as to reduce to the smallest practicable extent the inconvenience and obstruction suffered by the plaintiff in going from the wagon road to his buildings and fields.

The decree is affirmed.    All the costs in the court below and in this court to be paid by the defendant.