## Gring et al. v. Sinking Spring Water Company.

*Water companies — Power to acquire land to prevent contamination of water—Injunction—Acts of May 26, 1893, and June 7, 1907.*

1. The Act of May 26, 1893, P. L. 158, authorizing water companies to relocate roads destroyed and to acquire land to preserve water supply from contamination, is not repealed by the Act of June 7, 1907, P. L. 455, authorizing the appropriation of water supplies for drinking, commercial, etc., purposes. The two acts deal with different subject-matters and are quite capable of standing together without interfering with each other.

2. An injunction in equity is not of right, but of grace, and will not issue when, upon a broad consideration of the situation of all the parties in interest, good conscience does not require it.

3. In equity the situation at the time of the decree, and not at the commencement of the suit, is the criterion.

4. Where the granting of an injunction will inevitably do a disproportionately greater injury to the party against whom it issues than the withholding of it will do to the party asking for it, that is ordinarily a sufficient ground for refusing it. This principle obtains with peculiar importance and controlling force when the act sought to be enjoined is one in which the public is concerned.

5. While the failure of a water company to comply with the requisitions of section 3, and possibly section 4, of the Act of June 7, 1907, P. L. 455, would ordinarily invalidate a lease of property and franchises by one water company to another, a court of equity will not grant an injunction invalidating such a lease where, upon a broad consideration of all the parties in interest, good conscience does not require it; especially where the granting of it will inevitably do a disproportionately greater injury to the party against whom it issues than the withholding of it would do to the party asking for it; where among the parties in interest the public is concerned, and where a due consideration of the Act of May 26, 1893, P. L. 158, accentuates the necessity of applying these equitable principles in negation of the propriety of granting the injunction prayed for.

Bill for injunction. C. P. Berks Co., Equity Docket, 1917, No. 1197.

*Cyrus G. Derr,* for plaintiffs; *Edgar S. Richardson,* for defendant.

ENDLICH, P. J., Sept. 5, 1922.—The further hearing directed in this case has developed the fact that there was preliminary action on the part of the defendant company looking towards the appropriation of plaintiffs' water and land. The corporate action to this end, taken Jan. 14, 1916, is evidenced chiefly by a minute over the signature of the defendant company's then secretary, now deceased (Findings of fact, 12). Though not all it might have been in the way of precision and positiveness, this action was an attempt at compliance with the law and probably a sufficient condemnation as against a bill in equity for an injunction which "does not allege defendant failed to take necessary corporate action before proceeding with its condemnation:" Gring *v.* Water Co., 270 Pa. 232, 253.

It developed the additional fact, which is now admitted on behalf of the defendant company, that none of the certificates or stipulations, etc., spoken of in section 3 of the Act of June 7, 1907, P. L. 455, or the resolution mentioned in section 4 thereof, were, in the matter of the leasing to the defendant company of the plant of the Wyomissing Water Company, filed by either company with the Water Supply Commission or the Secretary of the Commonwealth as respectively required by that enactment.

It also developed the fact, likewise admitted, that the defendant company had not filed its written acceptance, as required by the Act of 1907, of that act and of the Act of April 13, 1905, P. L. 152, and its surrender of the right of eminent domain, etc., as prescribed in said acts.

Finally, it developed the fact that the taking of plaintiffs' water and land is not necessary to enable the defendant to supply what was the village of

Gring et al. v. Sinking Spring Water Company.

Sinking Spring, for the service of which and of adjacent parties it was originally created, nor perhaps for supplying the Borough of Sinking Spring within the strict limits of its incorporation.

What, in view of these facts, is the effect of the pertinent statutes in this case? And, considering those statutes, what decree do the law and facts of the case require?

Aside from the Act of June 19, 1871, P. L. 1360, upon which the jurisdiction of this court in this case rests, the statutes to be considered are those of May 26, 1893, §§ 2 and 3, P. L. 158, and the Act of June 7, 1907, P. L. 455— the latter exacting acceptance, etc., of the Act of April 13, 1905, P. L. 152.

The Act of April 13, 1905, P. L. 152, is as follows:

"Section 1. Be it enacted, &c., that no water company hereafter incorporated under any law shall have powers or exercise the right of eminent domain as respects the appropriation of the streams, rivers or waters of this Commonwealth, or any of them, nor the land covered thereby."

The Act of June 7, 1907, § 3, P. L. 455, ordains: "That from and after the passage of this act, no sale, assignment, disposition, transfer and conveyance of the franchises, and all the property, real, personal and mixed, of any corporation heretofore or hereafter formed for the supply of water to the public, or for the supply, storage and transportation of water and water-power for commercial and manufacturing purposes, or of any other water or water-power company, to any other such corporation shall be valid until a certificate authorized by a majority of the stockholders of the corporation so purchasing, and duly executed by the president and secretary thereof under the seal of said corporation, designating the river, stream or other body of water, and, as near as may be, the points on the said river, stream or other body of water between which it is proposed to take or use water or water power thereafter, and stipulating that the right heretofore existing in either the corporation so purchasing or the corporations so selling to take or use water or water power from any river, stream or other body of water, or portions thereof, not so designated, shall be and are thereby forfeited and surrendered and shall revert to this Commonwealth, shall have been approved by a majority of the members of the Water Supply Commission of Pennsylvania and filed in the office of the Secretary of the Commonwealth."

This is followed by a proviso to this effect: "Provided, however, that no such certificate shall be approved by the said Water Supply Commission of Pennsylvania until the corporation so purchasing shall have filed in the office of the Water Supply Commission of Pennsylvania a written acceptance, under the seal of said corporation and authorized by a majority of the stockholders thereof, both of this act and of the Act approved April 13, 1905, entitled 'An act providing that the right of eminent domain, as respects the appropriation of streams, rivers or waters, or the land covered thereby, shall not be exercised by water companies incorporated under law,' agreeing to be subject to and bound by the provisions of both of said acts, with like effect as if said corporation had been formed subsequently to the passage of both of said acts, and shall have filed a certified copy of said acceptance in the office of the Secretary of the Commonwealth."

This, in turn, is followed by section 4, providing in substance that water companies requiring a new or additional supply of water may make application therefor by filing in the office of the Secretary of the Commonwealth a certified copy of a resolution of its stockholders, under the corporate seal, and filing a duplicate in the office of the Water Supply Commission, setting forth

3 D. & C.

Gring et al. *v.* Sinking Spring Water Company.

the necessity and the stream and point upon the stream at which it is desired to take, and if the application be approved by a majority of the commission and by the Governor, the Secretary of the Commonwealth shall issue a certificate that such additional supply has been duly authorized.

Whatever effect the Act of April 13, 1905, has upon the present case is derived from the requirement of its acceptance in the Act of June 7, 1907, by the water company acquiring the franchises and plant of another, the validity of such arrangement being made to depend upon the filing with the Water Supply Commission of a certificate setting forth certain matters and stipulating for surrender of the power to take water not specified therein and accepting the provisions of the Acts of 1905 and 1907. On the other hand, the pertinency of section 3 of the Act of 1907 is altogether manifest. It is true that the enumeration of the transactions to be covered by the Act of 1907 does not mention leases, and that it seems to have in contemplation transactions, the result of which is a change of ownership. But, for practical purposes, a lease for 999 years is of that character and may well be deemed included in the terms "transfer" and "purchase"—where the only thing retained to the lessor company is what is essential to the preservation of its corporate existence (Findings of fact, 7). If, indeed, the Acts of 1905 and 1907 constituted the whole of what is to be considered, there might be little, if any, room for hesitation about the conclusion that the lease of July 2, 1907, must be held invalid and the plaintiffs entitled to a decree accordingly. But there is still to be reckoned with the Act of May 26, 1893, §§ 2 and 3, P. L. 158. The title of that enactment declares it to be "An act authorizing water companies to relocate roads destroyed and to acquire land to preserve water supply from contamination. It provides as follows:

"Section 2. That any such water company shall be and is hereby empowered to acquire and hold, by purchase or condemnation, such lands along and contiguous to streams of water, or reservoirs from which water is taken for public use, as may be necessary to preserve them from contamination: Provided, that no land shall be taken for the uses mentioned in this act until just compensation shall have been made for property taken, injured or destroyed, which shall be paid or secured before such taking, injury or destruction: And provided, further, that any owner of land along said streams shall have the use of the water for farming and domestic purposes, with free ingress and egress at all times to such streams.

"Section 3. The damage incurred . . . in acquiring lands to preserve water supply from contamination, as authorized by the 2nd section of this act, shall be ascertained and paid by such water company in the same manner as is provided for in regard to the taking of lands, waters, materials, property and franchises for the public purposes of such water company, and no lands, property or franchises shall be taken for the uses mentioned in this act until just compensation shall have been paid or secured therefor."

Thus, the Act of 1893 deals specifically with its subject-matter, whilst the Act of 1907 can, at the most, be regarded as dealing with the same subject-matter in a general way; and, therefore, the Act of 1893 can hardly be held intended to be repealed by the later statute, having no repealing language except the stereotyped repeal of all acts or parts of acts inconsistent therewith, which adds nothing to the force of the later act as repealing any prior: see Hickory Tree Road, 43 Pa. 139. Or, perhaps, it would be more accurate to say that the Act of 1893 deals with a different subject-matter from that of the Act of 1907. The former deals with appropriations to guard against contamination of an existing water supply—the Act of 1907 with appropriation

of water supplies for drinking, commercial, etc., purposes, the two quite capable of standing together without interfering with each other. It admits of no question that in a large measure the defendant's proposed appropriation is "to serve the purposes of the Act of 1893, and that its action conforms to the procedure contemplated by that statute. To that extent, the action of the Sinking Spring Water Company here in question seems sustainable under the Act of 1893.

As regards the remainder of the plaintiffs' case, it has been pointed out authoritatively that it is in equity—the jurisdiction being conferred by the Act of June 19, 1871, P. L. 1360—"subject to the rules which govern equity practice," and exercisable "in accordance with the principles of the practice of equity:" 270 Pa. 246, 247. It is among those principles that an injunction is not of right but of grace, and will not issue when, upon a broad consideration of the situation of all the parties in interest, good conscience does not require it: see Heilman *v.* Street Ry. Co., 175 Pa. 188, 199; Pennsylvania R. R. Co. *v.* Street Ry. Co., 184 Pa. 227, 237. And, as having a material bearing upon that inquiry, it is important to observe not only that in equity the situation at the time of the decree, and not at the commencement of the suit, is the criterion (Shaw *v.* Bayard, 4 Pa. 257, 259), but that where the granting of an injunction will inevitably do a disproportionately greater injury to the party against whom it issues than the withholding of it will do to the party asking for it, that is ordinarily a sufficient ground for refusing it. When the act sought to be enjoined is one in which the public is concerned (as here it is), this principle obviously obtains with peculiar appropriateness and controlling force. Nor, perhaps, ought the briefness of the time that intervened between the passage of the Act of 1907 and the execution of the lease of the Wyomissing system—June 7th to July 2nd—to be wholly ignored. Upon the presumption that men endeavor to act lawfully, it would seem but fair to assume that these parties believe themselves to be acting accordingly to the law existing at the time, being uninformed concerning its change by the Act of 1907. Of course, this consideration is not decisive in favor of defendants; but it would seem to be a circumstance to which equity may give some effect. And if the Act of 1893 is not to be deemed capable of sustaining, in any part or for any purpose, the defendant's proceeding as one intended to be under that statute, its presence, defendant's appeal to it in the resolution of Jan. 14, 1916, and the conformity of the procedure to what it prescribes, entitle the act to consideration as negativing still further the propriety of granting the injunction prayed for.

If what has been said is correct, the result will have to be to sustain the defendant's actions, at least in so far as they are needful or appropriate, in view of the Act of 1893; that is, in so far as they appear to conform to the procedure contemplated by the Act of 1893, and to serve the purpose of protecting the water involved from contamination, or in so far as the inhibition of functions closely allied with, or incidental to, those clearly contemplated by the Act of 1893 would impair or forbid the exercise of the latter, provided a suitable bond be filed to indemnify the plaintiffs against injury by the appropriation of water and land belonging to plaintiffs. This bond, under the evidence, ought, in order to be ample upon any theory, to be in $15,000. It would further result that the lease of July 2, 1907, is, strictly speaking, invalid, but that familiar equitable principles will apply to stay the granting of full relief by injunction under the Act of 1871. Possibly, a decree somewhat similar to that entered at *nisi prius* and approved by the Supreme Court in Heilman *v.* Street Ry. Co., 175 Pa. 188, would be effective to grant all the

3 D. & C.

relief the plaintiffs can rightfully expect in this litigation and the interest of the parties concerned, including the public, will permit.

It may be found convenient to have all the findings and conclusions, including the additional and the modified ones, stated in their sequence as they appear to be called for in the light of the facts developed at the further hearing and of the controlling acts of assembly.

## Findings of fact.

1. The Sinking Spring Water Company, defendant, is a corporation created under the laws of Pennsylvania, by charter dated Aug. 6, 1894, "for the purpose of supplying water to the public at the village of Sinking Spring, in the Township of Spring, in the County of Berks, and to such persons, partnerships and associations residing therein or adjacent thereto as may desire the same, upon such terms as may be agreed upon."

2. Catharine Gring, the original plaintiff in this bill, in 1895 owned, and thereafter continued to own, a tract of land, containing about forty acres, situate in Spring Township, bounded by lands of John K. Huyett and others, upon which there was a set of farm buildings, including dwelling-house, barn, etc., together with a hosiery factory and a grist-mill, both long since out of use, being the property described in the first paragraph of the bill.

3. Upon the said land was a stream of water, which, having its source in a spring, also upon said land, flowed a distance of about 500 feet to a public road, and, passing under the road, continued to flow over her, the said Catharine Gring's, land to the grist-mill and beyond, the stream, from and including its source to and somewhat beyond the grist-mill, being upon said land.

4. In 1895 the head-race of said grist-mill received the water of the said spring just below the public road aforesaid, which water, after passing over the wheel of the mill, was discharged through a tail-race below the mill.

5. In the year last mentioned the defendant company by legal proceedings appropriated for its purposes the water of said stream below the public road and just below the point at which the head-race received the water for the grist-mill.

6. On July 2, 1907, the defendant company took a lease for 999 years of the property, plant and franchises of the Wyomissing Water Company, a corporation under the laws of Pennsylvania, supplying water in an "adjacent" and lower-lying territory than that originally supplied by the defendant company, and connected its, the defendant's, mains with those of the lessor company.

7. The lease declares, *inter alia*, that the lessor company "doth let and demise to the lessee, its successors and assigns, the plant, water-works, pipes and appurtenances of the lessor as the same are or hereafter may be located and constructed, and all the other corporate property of the lessor, real, personal and mixed, wheresoever situate, now or hereafter acquired; also, all the rights, powers, franchises and privileges which may be lawfully exercised or enjoyed in or about the use, management, maintenance, renewal, extension, relocation or improvement of the plant, water-works, pipes and appurtenances," and reserving only the "franchise to be a corporation, and any other right or privilege which is or may be necessary to preserve the corporate existence and organization of the lessor."

8. Upon the transfer to the defendant company of the plant of the Wyomissing Company, and the connection of the mains of the two companies, water of the Wyomissing Company was used to make up deficiencies in the supply of the defendant company in its original territory, and also some of the water

taken from the said Catharine Gring's land by the defendant company was, and has continued to be, at least during parts of the year, furnished in the territory of the Wyomissing Company.

9. The said Catharine Gring having died, the land belonging to her, with her rights, passed to and is owned by her sons and heirs, Lewis W. Gring and George W. Gring, who have been substituted for their mother as plaintiffs in this action.

10. The stream in question, between the spring and the public road, flows through an open ditch or gully, about 75 feet wide and about 500 feet long, before it reaches the defendant's present intake, and is exposed and liable to serious pollution and contamination, and the defendant has been notified and urged by the State Board of Health to remedy these unsanitary conditions.

11. Although, for the purpose of supplying the territory for the service of which the defendant company was originally incorporated, or for the needs of the Borough of Sinking Spring alone, there would have been no necessity for an increase of volume and pressure, yet the development and improvement of the territory presently served by the joint plants of the Sinking Spring and Wyomissing Companies, if to be treated as effectually united by the lease of July 2, 1907, the erection of new and higher buildings, the growth of population as shown by the number of connections (515 in 1915 and 717 in 1919), etc., have created a need for a greater pressure and such increase in volume as may be obtained thereby.

12. Partly in order to meet the requirement of the State Board of Health, and partly to obtain a greater pressure and volume of water for its corporate purposes, the defendant company, on Jan. 14, 1916, adopted the following resolution: "After discussion of a higher pressure and a more sanitary condition, it was resolved that counsel be retained to condemn enough land above our present intake sufficient to build reservoirs and to surround the present water-works so that it will be perfectly safe from contamination, and of sufficient height to increase our pressure from 30 to 40 pounds." (Under the evidence adduced by the plaintiffs, this meant an increase of pressure by 30 to 40 pounds.) Of which resolution there is a minute signed by the company's then secretary, now deceased; and subsequently, assured of the sanction by the State Board of Health of its proposed plans, defendant inaugurated a proceeding to No. 18, April Term, 1916, for the appropriation (and the assessment of damages for the same) of the stream at a 66 feet higher level and of 87.05 perches of land for the construction of an additional reservoir, with the right to lay pipes from the said reservoir temporarily to the original reservoir and ultimately to the main; this method involving the carrying of the water of the spring and stream by a pipe-line beneath the surface of the ground and the supplying of the plaintiffs' land and buildings by pipes conducting the water to them.

13. This action is brought to enjoin the defendant company from prosecuting the proceeding to No. 18, April Term, 1916.

14. If the lease of July 2, 1907, is not to be declared invalid and action in pursuance of it not to be enjoined, then, with a view to enabling the defendant company to comply with the demands of the State Board of Health and to carry out the purposes of its incorporation and effectually to serve the public with water, protection against fire, etc., there is a reasonable necessity for the taking by defendant company of that which it proposes to take.

15. The method intended to be pursued by the defendant company will not deprive the plaintiffs of any substantial benefit of the stream as it now flows, but by giving plaintiffs pipe connections with the house, barn, etc., plaintiffs

3 D. & C.

will have practically as much and as convenient use of the water as they now make of it.

16. None of the certificates, copies of resolutions or stipulations, etc., required by section 3 of the Act of June 7, 1907, P. L. 455, to be filed with the Water Supply Commission have been so filed by either the defendant company or the Wyomissing Water Company, and there has, of course, been no formal approval of the transaction between those companies by the Water Supply Commission, nor a filing thereof with the Secretary of the Commonwealth, as required by the Act of 1907. Nor, if the Act of April 22, 1905, P. L. 260, be applicable, have its requisitions been complied with.

17. Neither has there been any certified copy of acceptance of the Acts of 1905 and 1907, as prescribed by the last-mentioned statute, nor any surrender of the right of eminent domain as contemplated by those statutes.

18. The passage of the resolution of Jan. 14, 1916, was a *bona fide* attempt to inaugurate a proceeding for the appropriation of water and land, which, but for the passage of the Act of 1907, it would have been competent for the defendant company to pursue.

## Conclusions.

(a) The stream in question in this case is not a private supply within the statutory exemption of such from appropriation.

(b) The right of the defendant to appropriate that stream at a higher level than in 1895 was not affected by that appropriation, but may be exercised by the defendant at this time, unless enjoined on the ground of the invalidity of the lease of July 2, 1907, and consequent want of power in defendant to act upon and under the same.

(c) The contemplated method of treating the stream from the point of the proposed appropriation involves no forbidden deprivation of the use of the water by the owners of the land.

(d) There is no adequate reason for regarding the proposed appropriation proceeding by defendant as merely experimental.

(e) The failure of the defendant company to comply with the requisitions of section 3, and possibly section 4, of the Act of June 7, 1907, P. L. 455, would, if there was nothing else in the way, require a decision against the validity of the lease of July 2, 1907, and the granting of relief substantially as prayed for in plaintiffs' bill. But the principles applicable to the case as presented are the same as are applied in equity in other cases of injunctions of this character, to wit, that an injunction is a matter of grace and not of right, and that it will not issue when, upon a broad consideration of the situation of all the parties in interest, good conscience does not require it; especially where, as here, the granting of it will inevitably do a disproportionately greater injury to the party against whom it issues than the withholding of it would do to the party asking for it—where among the parties in interest the public is concerned—and where a due consideration of the Act of May 26, 1893, P. L. 158, accentuates the necessity of applying the equitable principles above referred to in negation of the propriety of granting the injunction prayed for.

(f) The principles just stated forbid the granting of the injunction prayed for, and, in turn, require the conclusion that a fair necessity for the appropriation proposed has been made sufficiently apparent as existing in the territory presently served by the defendant company, including that of the Wyomissing Company taken over by defendant.

(g) The appropriation by defendant company and its proceeding for that purpose are also sustainable under the Act of May 26, 1893, P. L. 158, as a measure for the prevention of pollution of the water served to the public.

*(h)* Upon the filing by defendant of a bond in $15,000, with security to be approved by the court, conditioned for the payment to the plaintiffs of all damages to which their lands shall have been and will be subjected by reason of the appropriation of part of said land and of the water thereon, and all costs which by final decree in this proceeding may be imposed upon said defendant, the bill will have to be dismissed.

And now, Sept. 5, 1922, it is ordered that the foregoing decision be filed, and that the prothonotary enter a decree *nisi* in accordance with the foregoing findings and conclusions, and forthwith give notice thereof to the parties or their counsel of record, *sec. reg.*

From Wellington M. Bertolet, Reading, Pa.