## Cook et al. v. The Pennsylvania Power and Light Company.

*Oscar G. Wickersham,* for plaintiffs.
*Snyder, Miller & Hull,* for defendant.

FOX, J.—We have before us preliminary objections to the bill of complaint filed in the above stated case.

The bill of complaint, after setting forth the usual matter of residences of the parties, the purposes and location of the defendant, to wit, that it is engaged in business as a power company generating electricity and operating a line or lines of wires for current transmission strung upon poles along Hudson, Sycamore and South Eighteenth Streets in the City of Harrisburg, in front of the properties and residences of plaintiffs, avers, in substance, as follows, viz., in paragraph 5, that the defendant placed its wires on its poles without any insulation or other device for the safety of persons residing on the streets aforesaid, including the petitioners; in paragraph 6, that the defendant advised the plaintiffs when it erected its poles that not more than 1100 volts of electricity would be transmitted over each of its said six wires, that no danger would arise therefrom, and, therefore, the plaintiffs delayed their proceedings to enjoin the defendant; in paragraph 7, that there has been transmitted 11,000 volts of electricity over each of said wires instead of 1100; in paragraph 8, that in the stringing of its said wires

and cables the defendant placed the same above and across wires of other companies, to wit, telephone and light, running across and leading into the homes of the plaintiffs and others of the neighborhood; that because of the wires and cables of the defendant not being insulated and running as aforesaid over wires of other public service companies, they are highly dangerous to human life and the property of plaintiffs and to others occupying said street, so that there is great and imminent danger to the lives and properties of the plaintiffs; in the 9th paragraph, that the plaintiffs are owners and users of radio receiving sets, and since, and continuously since, said defendant turned on its power as aforesaid, and as the result thereof, they have been greatly hindered, annoyed and prevented from the proper use of their radio receiving sets, in that, although previously thereto they were accustomed to have and enjoy uninterrupted radio reception from numerous broadcasting stations operating in different and remote cities of the United States, since the date aforesaid, they have been prevented from enjoying said sets and are now able to receive the programs of local broadcasting stations only.

The prayer of the bill in substance is, that an injunction be granted, restraining and prohibiting the Pennsylvania Power and Light Company, defendant, from the further transmission of electric current over its wires as now existing, from transmitting any current of electricity over its uninsulated wires in sufficient volume to amount to a nuisance to the plaintiffs in the use of their radio receiving sets; that a mandatory injunction be granted, requiring the defendant to remove its poles and wires from the streets mentioned in the bill, and for general relief.

The preliminary objections to the bill are as follows:

"1. Upon the facts averred in the bill of complaint the plaintiffs have a full, complete and adequate remedy at law which is specifically provided by the Public Service Company Law, approved July 26, 1913, P. L. 1374.

"2. The defendant should not be required to answer the facts averred in the plaintiff's bill of complaint, for the reason that the defendant has a full and complete defense to the plaintiffs' claim in this court, which does not require the production of evidence to sustain it, to wit, that this court is without jurisdiction to hear and determine the cause of action set out in said bill of complaint."

With respect to paragraphs 5, 6, 7 and 8 of the bill, we think the matters complained of are within the jurisdiction of the Public Service Act of July 26, 1913, P. L. 1374. Article II, section 1 *(a)*, *(c)* and *(t)*, and article V, section 2, are applicable to paragraph 5. Article V, section 1, is applicable to paragraphs 6 and 7 of the bill; article III, section 5, and article V, sections 2 and 13, are applicable to paragraph 8 of the bill. Article II, section 1, provides that it shall be the duty of every public service company to furnish and maintain such service, including facilities, as shall in all respects be just, reasonably adequate and practically sufficient for the accommodation and safety of its patrons, employees and the public, and in conformity with such reasonable regulations or orders as may be made by the commission. In article V, section 1, relating to the powers and duties of the commission, it is provided that the commission shall have general administrative power and authority to inquire into and regulate the service of all public service companies; and in section 2: "Whenever the commission shall determine, after hearing had upon its own motion, or upon complaint, as hereinafter provided, that the service, facilities, rules, regulations, practices or classifications of any public service company in respect to, or in connection with, or employed by, or in the performance of, its public duties within this Commonwealth, are unsafe, inade-

quate, insufficient, unjust or unreasonable, the commission shall determine and specify by an order in writing, to be made and filed as hereinafter provided, and to be served as hereinafter provided upon every public service company to be affected thereby, the just, reasonable, safe, adequate and sufficient service, facilities, rules, regulations or practices thereafter to be put in force, observed, rendered, used or furnished in the performance of its public duties by said public service company or companies, and thereupon it shall be the duty of every public service company affected by said order to observe and obey said order and all and every the mandates and requirements thereof."

Section 13 provides in substance that the commission may, after hearing upon its own motion or complaint, establish such standards of facilities and service of public service companies as shall be reasonably necessary for the safety, accommodation or convenience of its patrons, employees or the public.

In the case of Fogelsville & T. Elec. Co. *v.* Pennsylvania P. & L. Co., 271 Pa. 237, the Supreme Court, *inter alia*, at page 240, said: "But the legislature has the power to determine who shall promulgate and enforce its declared public policy, and when an agency of the government is selected or created for that purpose, no other body, judicial, executive or municipal, can step in and by decree, order, ordinance or otherwise, actively enforce the policy or do other acts in relation thereto, except, possibly, to sustain the legislatively created or designated body. By act of assembly, the Public Service Commission was the designated government agency to enforce its declared public policy, whether that policy originated by statute or was created by the commission. It is an arm of the state government, created for the benefit of the people, as well as the utilities it in part controls. There has been placed under the regulation, supervision and control of the commission, generally, all matters relating to rights, facilities, service and other correlated matters of a public service company. By this act a complete system in itself is presented to enforce such powers: York Water Co. *v.* York, 250 Pa. 115, 118. Courts were not intended to be the administrative tribunal for this purpose. The commission has not decided this appellant is not within its regulatory control and may not be compelled to respond to a complaint filed against it. Plaintiff had a full and complete remedy to prevent any encroachment or wrongful use of territory by defendant. Being a public service company, it could complain (section 6 of article VI) against defendant when it did an act forbidden or that it had no power to do—such acts as are within the field of the commission's control and subject to injury. The powers of control or regulation, or whatever authority the court may in other days have possessed over these concerns, are supplanted by the Public Service Commission."

In the case of St. Clair Borough *v.* Tamaqua, etc., Ry. Co. et al., 259 Pa. 462, 468, the Supreme Court, *inter alia*, said:

"Since the Public Service Company Law has been upon our books, we have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it in every instance before the courts will adjudge any phase of the controversy (Bethlehem City Water Co. *v.* Bethlehem Borough, No. 2, 253 Pa. 333, 337, 338; New Brighton Borough *v.* New Brighton Water Co. et al., 247 Pa. 232, 240, 241, 242); and it is plain that orderly procedure requires an adherence to this practice, otherwise different phases of the same case might be pending before the commission and the courts at one time, which would cause endless confusion."

Wherefore, we are of the opinion that jurisdiction is in the Public Service Commission and not in us as to paragraphs 5, 6, 7 and 8 of the bill, and it is doubtful whether, under "orderly procedure," we should at this time give any

consideration to the phase of the case as set forth in paragraph 9. Moreover, the plaintiffs by their bill pray that we restrain the defendant from the further transmission of electric current over its wires as now existing, and that a mandatory injunction issue requiring the removal by the defendant of its poles and wires from the streets aforesaid. To grant these prayers would be interfering with the powers and duties of the Public Service Commission. To grant the second, we think, would be an unreasonable exercise of this "kingly power" of injunction. To do so would be to deprive the public of the service of this defendant company. Light and power is supplied the public over these wires. We are bound to consider the results which would happen to the public if we directed the defendant company to cease functioning and to remove its poles, wires and cables.

In the case of Huckenstine's Appeal, 70 Pa. 102, the Supreme Court, *inter alia*, said:

"A court exercising the power of a chancellor, whose arm may fall with crushing force upon the everyday business of men, destroying lawful means of support and diverting property from legitimate uses, cannot approach such cases as this with too much caution. Its aid is not of right, but of grace, and it must be sure that the exercise of this kingly power is just, wise and proper before it takes from a citizen his means of livelihood and destroys the value of his property for legitimate uses. And more than this, it must look at the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place wherein it is called upon to exercise the power. In no other way can its justice, wisdom and propriety be exhibited in adjudicating upon the rights, interests and employment of the people subjected to its power. . . . The people who live in such a city or within its sphere of influence do so of choice, and they voluntarily subject themselves to its peculiarities and its discomforts for the greater benefit they think they derive from their residence or their business there. A chancellor cannot disregard all this. 'You must look at it,' said Lord Cranworth, 'not with a view to the question whether abstractly that quantity of smoke was a nuisance, but whether it was a nuisance to the persons living in the town.' . . . 'If the injury be doubtful, eventual or contingent, equity will not interfere by injunction:' Rhodes *v.* Dunbar, 7 P. F. Smith, 287; and a 'chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of a court and jury:' Richards's Appeal, 7 P. F. Smith, 113, 114."

In the case of Elliott Nursery Co. *v.* Duquesne Light Co., 281 Pa. 166, the Supreme Court, at page 173, said:

"It is still the equitable rule that 'the chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of a court and jury:' Richards's Appeal, 57 Pa. 105, 113. There are 'many things a chancellor must consider when called on to strike down a lawful business, necessary to be carried on for the public weal. It often becomes a grave question whether so great an injury would not be done to the community by enjoining the business that a complaining party should be left to his remedy at law:' Dilworth's Appeal, 91 Pa. 247, 250; Heilman *v.* Lebanon & Annville St. Ry. Co., 175 Pa. 188, 199."

The plaintiffs do not aver in their bill that by a diminution of electric current sent over these wires the injury complained of would be relieved. It may be that by reducing the voltage from 11,000 to 1100, or otherwise, per wire over each of the six, the trouble would be discontinued; on the other hand, it might still remain, and to prevent the interference complained of it might be

necessary to remove or annihilate the whole line for which the plaintiffs pray or to reduce it to such a degree of service so as to render it insufficient for the public's needs. Had the plaintiffs averred that this interference could so be modified or checked so as to injure neither the plaintiffs nor the public, this question at some stage of the case might be considered, but under the pleadings we are in doubt, and being in doubt we should not act in the affirmative. This question raised by paragraph 9 is a case of first impression and involves very grave consequences. It is common knowledge that the radio is sensitive and much affected by nearby electric appliances and uses of electricity. The interference by the latter with the former has not been overcome by our scientists, but we may look forward to the time, and perhaps in the very near future, when we shall see the one so controlled in its now mysterious operation that it will not interfere with the other. But until that time we are of the opinion that the users of the radio must submit to annoyance coming from nearby public service corporations generating, using and supplying to the public power, heat and light rather than stop their operation by injunctions. The service is of such public importance that a court of equity should not interfere with it except for very grave reasons.

Wherefore, we are of the opinion that the preliminary objections to the bill must be sustained and the bill dismissed.

*Decree nisi.*

And now, March 15, 1929, upon due consideration, it is hereby ordered, adjudged and decreed as follows:

The preliminary objections to the bill are sustained, the prayer of the petitioners is refused and the bill is dismissed, at the cost of the plaintiffs.